# Kirby *v.* Louisville & Nashville Railroad Company.

## *Injury to Servant.*

(Decided April 23, 1914. Rehearing denied June 4, 1914. 65 South. 358.)

1. *Master and Servant; Injury to Servant; Scope of Employment.* —Where a servant playfully turned a compressed air hose upon deceased, a fellow servant, and killed him, while the servants in the boiler department of railroad shop were resting at midnight eating their lunches, the master was not liable, as the servants at that time were not engaged in the master's business, and the accident was not due to any violation of duty by the master.

2. *Same; Duty to Guard Dangerous Agency.*—A compressed air hose used in the boiler department of the railroad shops of the master was not such a dangerous agency as to require it to be guarded to prevent its being used by unfit employees.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by H. L. Kirby as administrator, against the Louisville & Nashville Railroad Company for damages for the death of his intestate while engaged in the employment of defendant. From an order granting defendant's motion for new trial, plaintiff appeals. Affirmed.

CALLAHAN & HARRIS, for appellant. Under the evidence it was the duty of defendant to give some warning to its employees of the subtle and unappreciated danger of the compressed air hose.—1 LeB. § 235; 13 Am. Rep. 164; 105 Ind. 161; *Perry v. Marsh,* 25 Ala. 667; 35 L. R. A. 251; 7 Am., St. Rep. 445; 57 Fed. 918; 48 South. 1030; 23 L. R. A. (N. S.) 958. It cannot be said that the injury did not occur in the course or scope of the employment.—23 L. R. A. (N. S.) 959; 133 N. W. 878; 41 N. E. 1051; 2 LeB. 626; *So. Ry. v. Bentley,* 56

South. 251. The test of duty insisted upon and adopted by the court was unsound.—7 Am. St. Rep. 445; 87 N. E. 568; *Sloss-Sheffield v. Ralston,* 58 South. 261; 1 LeB. 140.

EYSTER & EYSTER, for appellee. The pleadings fail to state a cause of action against defendant, for which defendant could be held answerable in damages.—*Wes. Ry. of Ala. v. Milligan,* 135 Ala. 205; *Collins v. A. G. S.,* 104 Ala. 390; 66 L. R. A. 592. The master is not the absolute insurer of the safety of his servants.—*Williams v. Anniston E. & G. Co.,* 57 South 387; *L. & N. v. Fitzgerald,* 49 South. 860; *So. Ry. v. Carter,* 164 Ala. 110; 1 LeB. pp. 58 and 881. The duty to instruct and to guard was not present in this case as the instrument employed cannot be said to be a dangerous agency.—*Republic I. & S. Co. v. Woody,* 57 South. 441; 79 Am. St. Rep. 690; 98 Am. St. Rep. 290; 6 Mayf. 575; 2 LeB. 1850. The evidence shows that the act was not done in the furtherance of the master's business or within the scope of the servant's engagement.—*Hardeman v. Williams,* 150 Ala. 418; *So. Ry. v. Bentley,* 56 South. 252; 110 S. W. 296; 10 L. R. A. 404; *Wes. Ry. v. Mutch,* 97 Ala. 194; *Decatur Co. v. Mehaffey,* 128 Ala. 255.

MAYFIELD, J.—This is an action by the administrator, under the Employers' Liability Act, to recover damages for alleged wrongful death of plaintiff's intestate, who was a servant of defendant, appellee here.

Deceased was employed by the defendant in the boiler department of its railroad shops at Decatur. The motive power used in this department was compressed air, which was stored in a tank or drum from which radiated pipes which transmitted the air to different parts of the shop. One of these pipes entered the toolroom. To

this pipe was attached a hose, and the compressed air was admitted into this hose by turning a lever or screw. The hose was about one-half to three-quarters of an inch in diameter, and the pressure of air therein was from 75 to 90 pounds to the square inch.

The deceased, together with a number of his fellow workmen, was in the toolhouse resting, as was their custom to do, at the particular time of the accident. The deceased was lounging on the floor of the toolhouse, and one Pigue, a fellow employee of deceased, was playing with the air hose. Pigue was a witness, and described the accident and death as follows:

"I was a boiler maker and Mr. Kirby was a helper, and Mr. Thornhill was foreman in the boiler making department. I was present on the night of February 16th, when Mr. Woody Kirby was injured and subsequently died. The injury was between 12 and 12:30 at night. That was the supper hour, when we would eat our midnight lunch, and it was the custom that the employees would lay off at that hour for that purpose. At the time Mr. Kirby was injured we were in the toolroom; that is, the toolroom in the boiler shop. The injury happened in this way: We were all in the toolroom as we usually are lots of times, and after we had eaten supper we were lying down there taking a rest, and I had the air hose playing with it, and Mr. Kirby said, 'Stick them hose in me and blow me up,' and I said, 'Flippo, hold him and I will do that,' and Flippo said, 'I won't do it,' and I just shoved the hose down to him, and it was done in a half minute. He raised up. There was an immediate effect, just at once. You could see he was hurt. He threw up his supper right now."

"The hour called the midnight noon hour, when we would eat our supper, was the hour that we were off duty. We were not on duty at that time. It was in

play—we taking up the rest hour. As I said awhile ago, we were playing, and I had the hose playing with it, and he was laying down there and he says, 'Stick that hose in me and blow me up,' and I said, 'Flippo, hold him and I will do that,' and Flippo said, 'I won't do that.' Flippo is my partner. We work together. I am a boiler maker and he is my helper. And Kirby looked at me and said, 'Come on if you are coming,' and he was kicking at me. He was laying on his back, and I stuck the hose between his limbs, and it wasn't there a second before I seen that something had happened. His face turned as red, and he throwed up his supper, and I asked him what was the matter with him, and, as soon as he could speak, he said, 'You have killed me.' Mr. Vohlers is the roundhouse foreman. I use the air testing tools lots of times. Sometimes I would go in there and test my own tools. I had seen the air turned on others the same way and it never had any bad effect on them."

The complaint proceeded upon two theories: First, that the compressed air was a dangerous agency, that it was used in such a way as to be alluring to the defendant's employees, that the defendant knew of the dangers, and that the employees did not, and that a duty was thereby imposed upon the master to warn the servants, which duty was not performed; second, that, the agency being a dangerous one, which attracted or allured the servants, the duty rested on the master to so guard it as that accidents like the above one narrated would not occur, and that the master failed to perform or discharge this duty, and that such failure proximately resulted in the death of plaintiff's intestate.

It is conceded by counsel for plaintiff, appellant here, that there can be no recovery as for the negligence of a fellow servant, or under any one of the five subdivisions of the Employers' Liability Act. Section 3910 et seq., of the Code.

The duty and the liability, if such there be, are common-law, and not statutory, ones. In other words, it is conceded by counsel for appellant that the negligence relied upon was that of the master, and not that of a fellow servant; and that the statutes have nothing to do with the case, except in so far as they authorize actions for wrongful death of servants.

The trial court submitted the case to the jury on the pleadings, the evidence, and the instructions, and the jury returned a verdict for the plaintiff.

The defendant moved the court for a new trial, which motion was granted, and, from the ruling granting the motion, the plaintiff presents, under our statute, this appeal.

The trial judge, unless he changed his mind after the verdict, acted upon the theory that there was a scintilla of evidence sufficient to require the case to be submitted to the jury, but not enough to support the verdict and judgment for the plaintiff.

The record has been here examined very carefully, and we find no evidence to justify the trial court in submitting this case to the jury. The trial court should have directed a verdict for the defendant, because there was no evidence to support a verdict for the plaintiff. Hence, of course, there was no error in setting aside the verdict and awarding a new trial. It would have been reversible error to have declined to do so on the defendant's motion to that end.

There is no evidence in this record which shows, or tends to show, the breach of any duty on the part of the master, the Louisville & Nashville Railroad Company, which resulted in, or proximately contributed to, the death of plaintiff's intestate. All the evidence, without dispute, shows that the death of plaintiff's intestate, and the accident for which this action was brought, was the

proximate result of the playful carelessness of the intestate and of his fellow servant, Pigue, without any fault whatever on the part of the master, said railroad company. The undisputed evidence shows that the deceased and his fellow servant who killed him were not engaged in the work of the master at the time and on the occasion of the fatal accident. They had no directions, express or implied, from the master to do what they did, which resulted in the death. Their acts on the fatal occasion were purely gratuitous and playful, and had no connection with their employment. There was nothing inherently dangerous in the use of compressed air in the master's business, nor in the appliances or the mode in which it was being used. Moreover, it was not being used in the master's business when the fatal injury occurred. Neither the deceased nor the fellow servant was engaged in the business of the master—acting within the line or scope of his employment—when the accident and injury occurred. The same result might have ensued if one had turned hot steam on the other, or had hit him with a hammer, or had shot him with a gun, which the master used in its business.

There was no evidence to support an action, under any count of the complaint, or under either theory proceeded upon on the trial or insisted upon on this appeal. There was no evidence tending to make a case as for creating or maintaining dangerous premises. There was no evidence tending to show a failure on the part of the master to provide or maintain a safe place in which the servant was to work, nor to show a failure to provide or maintain safe implements, tools, and appliances with which the servant was to work; nor was there shown any duty to warn the servant of the particular danger which resulted in the death of the plaintiff's intestate. There was nothing to show that the particular

danger or risk should or could have been anticipated; much less to show a duty to warn or provide against such a contingency.

We are wholly unable to find any evidence in this record which, if true, shows any liability on the part of the master for the death of the servant. If death had not resulted, surely the injured servant could not have maintained an action for the injury which he solicited and requested another servant to inflict, when both were off duty, and when the master was not at all responsible for the acts of either. The statutes make defendants liable for wrongful death only when they would have been liable if death had not resulted from the injury.

A case very similar to the one at bar was that of Rose Ballard against this same defendant.—128 Ky. 826, 110 S. W. 296, 16 L. R. A. (N. S.) 1052. In that case were decided two propositions which dispose of this case the same being as follows: (a) "That a servant competent for the work for which he is employed is careless, reckless, stupid, and unfit to handle other appliances in the shop does not render the master liable for his use of a compressed air hose which it is not his duty to handle, but his handling of which by way of prank has not been stopped, in such a way that the air enters the body of a coservant and kills him."

(b) "A compressed air hose is not a dangerous agency requiring a master to guard it so that ignorant or reckless persons cannot use it to the injury of others." In *Ballard's Case* intestate was a minor, a mere apprentice, and was engaged in the master's service, when a fellow servant slipped up behind him and turned the hose on him, killing him. It was in that case alleged that the coservant who did the wrongful act was a careless, reckless, and stupid boy, and unfit for the employment, and that all this was known to the master, or to its su-

perintendent, and such negligent servant was retained after such knowledge; that such superintendent knew that such negligent servant had been using the hose on deceased on prior occasions, and knew it was danger- ous; yet he had never warned the deceased or the neg- ligent servant, both of whom were minors.

Notwithstanding all these facts were alleged, which certainly tended to make a much stronger case than the one now under consideration, the Kentucky court held that the complaint stated no cause of action. Without committing ourselves to the full length and breadth of the holding in the Kentucky Case, nor to all that is said in the opinion, we unhesitatingly hold that there is no evidence in this record which, if true, shows any liability on the part of the defendant. This much of what is said in the *Ballard Case,* however, is applicable in, and conclusive of, this case:

"The sum of all the facts alleged is about this: That Hodge, in using an air hose as a prank on Ballard, caused his death, when there was nothing in the appear- ance of the thing to suggest danger to him or to Bal- lard, and when, in so doing, he was discharging no duty to the defendant. When the master has selected fellow servants competent to discharge the duties assigned to them, he is not responsible for an injury which they may do in a prank outside of their duties, unless they use an instrument that was dangerous, and the master, with knowledge of the deadly character of the thing has fail- ed to exercise such care as a man of ordinary prudence would exercise in keeping it so that it would not do in- jury. The master, in selecting his servants, is not re- quired to take into consideration the pranks one servant may play on his fellows outside of the scope of his duties. The master has no right to control his servant outside of his service as to the pranks he may play on

his fellows. As to these, the master is under no greater responsibility to the fellow servants than to a stranger. If Ballard had not been in the service of the railroad company, it would hardly be maintained that the company would be responsible to him on the facts alleged. Dangerous agencies must not be intrusted to unfit hands, and proper care must be exercised to protect others from them. But the duty to guard a dangerous agency, in the sense in which the terms are used in the rule referred to, does not extend to such a thing as an air hose on the facts shown. An air hose is an instrument so familiar and usually so harmless that we do not see how this principle can be applied to it."

Of our adjudicated cases, the one nearest like the one here under consideration was that of *Western Railway of Alabama v. Milligan,* 135 Ala. 205, 33 South. 438, 93 Am. St. Rep. 31. In that case the plaintiff was very ticklish, or what is called "goosey," and, when punched, he jumped frantically and made ridiculous gyrations. The superintendent of the defendant railway company ordered the plaintiff to brush off a table on which knives were revolving, and as he was about to brush the table, or in the act of so doing, the superintendent "goosed" the plaintiff, who jumped frantically as usual, throwing his hand under the knives, and being thereby badly cut. The defendant was held not to be liable for this act of the superintendent. In that case, the court, speaking through McClellan, C. J., said:

"We are not of the opinion that this act of Cunningham, assuming that he had superintendence intrusted to him in respect of having Milligan to brush off the table, and that the act was done while he was in the exercise of such superintendence, was an act of *superintendence,* for the consequences of which, under the Employers' Liability Act, the company is liable. There is no pre-

tense that the act was intended or calculated to further the work Cunningham had directed Milligan to do. It bore no sort of relation to that work, but was a mere casual pleasantry or act of fun making on the part of Cunningham toward Milligan, as one man would tickle another to make him jump or laugh spasmodically."

If the master in that case was not liable for that act of the superintendent, this defendant is certainly not liable for the act of the fellow servant, shown to have caused the death of plaintiff's intestate.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ., concur.

