(97 South. 711)

**Ex parte AMERICAN FUEL CO.** (6 Div. 814.)

(Supreme Court of Alabama. Oct. 18, 1923.)

Master and servant ⬤⟝375(2)—Injury received while going from work held not compensable; "arising out of and in the course of employment."

A miner, killed by the overturning of a motor truck while being transported by a third party to his home, after his daily work was done, at a point 3 miles from the employer's premises, and without knowledge that a few days before his employer withdrew from operation of the truck, *held* not injured upon the premises of his employer, nor during the hours of service, nor at a place where the duties of his service required him to be, so that, under Compensation Act, § 36, subd. 2(j), his injury did not arise out of and in the course of his employment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

Certiorari to Circuit Court, Jefferson County; Romaine Boyd, Judge.

Petition of the American Fuel Company for certiorari to the Circuit Court of Jefferson County, to review the judgment of said court in a proceeding under the Workmen's Compensation Act by May Alice Grantham against the American Fuel Company. Writ granted; reversed and rendered.

The finding of facts made by the trial court is as follows:

"Bart Grantham, an employé of defendant, the American Fuel Company, was killed on March 3, 1922, by the overturning of a motor truck in which he was returning to his resi- dence at Warrior from his work in defendant's mines in Beltona.

"On said date, and for more than a year prior thereto, respondent was engaged in the coal mining business at the mining camp or village of Beltona, Jefferson county, Ala., about six miles from the town of Warrior.

"On October 1, 1921, defendant began the operation of a motor truck service for the transportation of its employé miners residing in Warrior to and from their work at defendant's mines at Beltona. These trucks operated on a regular schedule, and between fixed terminal points in Warrior and Beltona, leaving Warrior at 7:30 each morning for the mines at Beltona, and starting from respondent's commissary in Beltona on the daily return trip at 4:30 p. m., shortly after the miners came out of the mines. Defendant charged a fare of 25 cents per round trip, and defendant's employé, Grady Whaley, who drove the truck for defendant, would enter in a book each day the names of defendant's employés so transported, and turn these records in to defendant at its office at Beltona, and the amounts so shown to be due would be charged respectively against such employés and deducted from their earnings on the biweekly pay days.

"The proceeds from said fare of 25 cents was slightly less than the actual cost of said service under said conditions, although estimated by defendant to about cover same. The usual charge for round trip transportation from Warrior to Beltona and return by public conveyance was 50 cents. Use of defendant's said motor truck service was optional with its said employés, but it was limited to and for them exclusively, and practically all of said employés living in Warrior rode to and from their work in said trucks of defendant.

"Defendant continued to operate said motor truck service as aforesaid until February 13, 1922, when said Grady Whaley began, and continued until decedent's death, the operation of said motor truck service between said points, and on the same schedule, under the following circumstances, terms and conditions:

"By agreement between respondent and said Whaley, defendant withdraw [withdrew] its trucks, and Grady Whaley put in said service two of his own motor trucks of a different make. Said Whaley was to have exclusive control of the operation of same, and pay all expenses and maintenance, including repairs, gas, and oil, and defendant agreed to collect for and pay to said Whaley on said pay days the sums due for fares by defendant's employés upon their names and amounts due being turned in to defendant by said Whaley as formerly. Said Whaley was to provide and continue said transportation for defendant's said employés residing at Warrior, but he was not limited to carrying said employés exclusively, and nothing was said as to amount of fare to be charged. Upon beginning operations under said agreement, he raised the charge for said round trip fares from 25 to 35 cents.

"When defendant first inaugurated said motor truck service, said Whaley, in addition to driving said truck for the said transportation of said employés, had also driven a daily freight truck for defendant from Beltona to Birming-

hum and return, this after carrying said employés to Beltona in the morning and before taking them back to Warrior in the afternoon; and prior to February 13, 1922, he had received a fixed salary from defendant for all of said service of $100 per month. Under the new arrangement he continued to . drive the freight truck to and from Birmingham, but the salary paid him by the defendant was reduced to $80 per month, in addition to which he was to receive from defendant the fares due from said employés as aforesaid.

"On the 11th of February, 1922, defendant's superintendent told a few of its employés at the company's office that it would thereafter withdraw from the operation of said motor truck service, and Grady Whaley would take same over on his own account, but no other notice was given by defendant, and no notice of said charge [change] was posted, and decedent, Bart Grantham, did not receive any notice, and had no knowledge or notice of any change in respect to the operation of said motor truck in said service, except of said increase in fare.

"Decedent, Bart Grantham, resided in Warrior, and was employed by defendant as a coal miner at its said mine at Beltona about the middle of October, 1921, and continued in said employment until the time of his death, residing [riding] regularly in said motor trucks from Warrior to his work in the mines at Beltona and back under said terms and conditions until the time of his death.

"On the afternoon decedent was killed, said Grady Whaley had in service another truck to carry passengers from Beltona to Kimberly, and upon his request, an employé of defendant named ——— undertook to drive the Warrior truck for said Whaley, and said Warrior truck, filled with defendant's employés from Warrior, including decedent Grantham, who had just come out of the mines, left from in front of defendant's commissary as usual at 4:30 p. m. on the return trip to Warrior, and a few minutes thereafter while being driven by said ———, when on the usual route at a point on said road about halfway to Warrior, and about three miles from Beltona, the truck turned over, and said decedent Grantham was killed.

"Defendant had due notice of decedent's said accident and death, and decedent and defendant were both subject to the Workmen's Compensation Law.

"The court further finds and concludes that said motor truck service was inaugurated and maintained for the mutual benefit of defendant and its said employés residing at Warrior. That defendant was obligated to said decedent, at the time of his said accident and death, to maintain said service as an implied term and condition of his said employment and as incidental to his said employment, and that said decedent's said accident and death arose out of and in the course of said decedent's employment by defendant, and while said decedent was engaged where his services required his presence as a part of such at the time of the accident, and during the hours of service of such workman."

Coleman, Coleman, Spain . & Stewart, of Birmingham, for appellant.

Under the circumstances of this case, the family of decedent were not entitled to the benefits of the Compensation Act. Acts 1919, p. 238; Otto v. Duluth St. Ry., 138 Minn. 312, 164 N. W. 1020; Erickson v. St. Paul S. S. Ry., 141 Minn. 166, 169 N. W. 533; Nesbitt v. Twin City Co., 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 165; 1 Schneider, W. C. L. 527; Strohl v. Eastern Penn. R. R., 270 Pa. 132, 113 Atl. 62.

Horace C. Alford, of Birmingham, for appellee.

No brief reached the Reporter.

PER CURIAM. The question presented is, whether, under the facts found by the trial court, the Alabama Compensation Act (Gen. Acts 1919, pp. 206, 238) is applicable. The more specific inquiry is whether the occasion and circumstances of Grantham's death were excluded from the act's operation by the provisions of section 36, subdivision 2 (j) (Gen. Acts 1919, p. 238), reading:

"Without otherwise affecting either the meaning or interpretation of the abridged clause, injuries by an accident arising out of and in the course of his employment, it is hereby declared: *Not to cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their service requires their presence as a part of such service at the time of the accident, and during the hours of service as such workmen.*" (Italics supplied.)

This court, in accordance with the general rule, has accepted the view that the appropriation in the Alabama act of terms appearing in the Minnesota act effected to introduce those terms as construed by the Supreme Court of Minnesota prior to the adoption of the Alabama act. Ex parte Smith Lumber Co., 206 Ala. 485, 90 South. 807; Ex parte Sloss-Sheffield Co., 207 Ala. 219, 92 South. 458, 460; Ex parte L. & N. R. Co., 208 Ala. 216, 94 South. 289, 291, 292. The Minnesota court, prior to the adoption of the Alabama act, construed the provisions italicized in the quotation ante as interposing an expression in the nature of a limitation of the general clause "arising out of and in the course of employment." State ex rel. v. Dist. Ct. of St. Louis County, 129 Minn. 176, 151 N. W. 912, 913; Nesbitt v. Twin City Co., 145 Minn. 286, 177 N. W. 131, 133, 10 A. L. R. 165. This view of the effect of the italicized matter in the quotation ante was accepted in Ex parte Majestic Coal Co., 208 Ala. 86, 93 South. 728.

In further acceptance of pertinent pronouncements made by the Minnesota court, this court, in both construction and administration of the act, has recognized its remedial character, and where reasonably possible has accorded the terms of the act a broad, literal interpretation, so to accomplish the purpose intended thereby. Ex parte

Smith Lumber Co., 206 Ala. 485, 486, 90 South. 807, citing State ex rel. v. Dist. Ct. of St. Louis County, 128 Minn. 43, 150 N. W. 211; Ex parte L. & N. R. Co., 208 Ala. 216, 94 South. 289. But in neither construction nor administration of the act has this court, any more than has the Minnesota court (so far as we are advised), entertained or enforced an interpretation of provisions of the act that was inconsistent with any unequivocal like provision in the act.

With reference to the provision under the consideration it was observed in Otto v. Duluth St. Ry. Co., 138 Minn. 312, 164 N. W. 1020—decided in 1917—that the statute confines personal injuries within its purview to those received while workmen are "engaged in, on or about the premises where their services are being performed, or where their services require their presence as a part of such service at the time of the injury, and during the hours of service as such workmen." Erickson v. St. Paul Ry. Co., 141 Minn. 166, 169 N. W. 532. This language is common to both acts. Since it occurs in the Minnesota and Alabama acts only, decisions in other jurisdictions, treating compensation acts not containing these terms. are of little, if any, value in the determination of questions subject to the control of the terms present, alone, in the Minnesota and Alabama acts.

According to the findings of fact made by the court below, Grantham, when injured, was not upon the premises of the defendant; nor was he injured during his hours of service; nor was he, when injured, at a place where the duties of his service required him to be.

Grantham, when injured, was en route to another place, remote from the place and scene of his service as workman for defendant; being transported at his own expense from the place of service to the town of his residence. The decision in Ex parte L. & N. R. R. Co., 208 Ala. 216, 94 South. 289, involved materially different facts and circumstances. There the workman (House), when injured, was on the premises. Since, as a part of his service, that employé was entitled to reasonable opportunity to prepare to leave and to leave the premises in the usual way, House was within the purview of the stated limitation of the act, both in respect to his then relation to his service and to the hours of that service. That decision is in no wise inconsistent with the conclusions pronounced in this case.

The injury suffered by Grantham was not suffered on an occasion when the provisions of the Alabama Workmen's Compensation Act were applicable to him. The petition for certiorari is granted. The judgment awarded is reversed and annulled.

Reversed and rendered.

ANDERSON, C. J., and SOMERVILLE, THOMAS. and BOULDIN, JJ., concur.

NOTE.—The foregoing opinion was prepared by Justice McCLELLAN before his resignation, and is adopted by the court.