182 So. 6
**PERFECTION MATTRESS & SPRING CO.
v. WINDHAM.**

**6 Div. 270.**

Supreme Court of Alabama.

June 9, 1938.

J. Chandler Burton, of Birmingham, for appellant.

Wm. S. Pritchard and Aird & Fox, all of Birmingham, for appellee.

GARDNER, Justice.

The defendant mattress company (to so designate it for brevity) owned a truck with a flat body extending over the fenders. Plaintiff, a boy seventeen years of age, was seated on the body of the truck with his feet hanging over the sides, when, in going through an underpass in Birmingham, it was run too close to the wall, resulting in rather serious injury to plaintiff's knees.

Plaintiff's complaint is based upon the theory that he was an invitee of defendant, and was injured as a result of negligence of defendant's servant or agent after discovery of plaintiff's perilous position

on the truck. Jewel Tea Co. v. Sklivis, 231 Ala. 590, 165 So. 824.

Undisputably the truck was that of defendant, and attention is directed to our decisions to the effect that proof of such ownership raises a presumption that it was at the time being operated in the owner's business. Chandler v. Owens, 235 Ala. 356, 179 So. 256; Grimes v. Fulmer, 235 Ala. 645, 180 So. 321. But this is an administrative presumption only, based upon considerations of fairness and convenience in placing the burden of proof, and is not in itself evidence. And if the evidence clearly, and without conflict, shows the truck was not being so operated, and the circumstances do not support a reasonable inference to the contrary, this administrative presumption gives way and the truck owner is due the affirmative charge. Tullis v. Blue, 216 Ala. 577, 114 So. 185; Mobile Pure Milk Co. v. Coleman, 230 Ala. 432, 161 So. 829; Dowdell v. Beasley, 205 Ala. 130, 87 So. 18; Freeman v. Southern Life Ins. Co., 210 Ala. 459, 98 So. 461; Massey v. Pentecost, 206 Ala. 411, 90 So. 866.

The driver of the truck on this occasion (one Priest) was machinist for defendant company, and not its truck driver. The time was Saturday afternoon, when the employees did not work. It appears that "the boys in the mattress department" organized a baseball team, each making a donation. Priest himself gave fifty cents a week for twenty weeks and twenty-five cents a week after that. There were "fifty or seventy-five other boys who did the same thing." The defendant company also made contributions to a total of three hundred dollars. Priest was elected by members of the team as the manager. Defendant had nothing to do with such selection, nor with the purchase or handling of the equipment, Priest attending to all such matters. One English was defendant's manager. He had the baseball fund under control and took from the pay roll the several weekly contributions of the employees, and as Priest purchased equipment English would issue the checks from this fund. The team would practice after work hours, and the scheduled games were played on Saturday afternoon after working hours. Defendant's officials did not frequently go with the team on these trips, but once or twice when they did go, they used their own or company cars. As to the matter of transportation for the team, "it was done

through the mattress department, boys spoke to Mr. Jackson (defendant's president, we interpolate), and he agreed to loan us a truck through the shipping department, of which Mr. Buffington was the head. Mr. Buffington let us have the truck. * * * We would carry the players, bats and balls, and things like that, and maybe one or two boys at the plant would come along. When we got through and took the team back, I would take the truck and leave it at home. I would take it home and Monday morning when I went back to work * * * and usually I would get over in time for them to use it on Monday. There was no particular rule about that, as long as they had it there in time for work on Monday." The ball team was composed partly of employees of defendant and partly of others not so employed. Perhaps about evenly divided. But no one received compensation. The scheduled games were played before spectators averaging in number from two hundred to one thousand. The team was entered in the City League, and one of the rules "is that teams cannot be paid and retain their amateur status." After one of the games Jackson and Thompson, officials of the company, gave the team a dinner, or, as described, "a little banquet." No official of defendant assisted the manager in the supervision of the ball team.

On this Saturday afternoon when plaintiff was injured, the truck, driven by Priest, the manager of the team, was on its way for a scheduled game. They were on no business of defendant, but to engage in a pastime of their own after working hours. Of course defendant company's organization bore no relation to baseball, and we think it clear enough the foregoing facts disclose that defendant's employees were in no manner acting within the line and scope of their employment in thus engaging in a well known and popular sport.

Plaintiff seeks to hold defendant liable upon the doctrine of respondeat superior, which "applies only when the relation of master and servant 'is shown to exist between the wrongdoer and the person sought to be charged for the result of some wrong or neglect at the time and in respect to the very transaction out of which the injury arose.'" Powers v. Williamson, 189 Ala. 600, 66 So. 585, 587; 39 Corpus Juris 1268.

The above noted facts considered, the sport thus indulged in by the employees

242242

bore no more relation to defendant's business than the playful act of the superintendent in Western Ry. v. Milligan, 135 Ala. 205, 33 So. 438, 93 Am.St.Rep. 31, or the somewhat similar, though more serious, conduct of a fellow servant in Kirby v. Louisville & Nashville R. R. Co., 187 Ala. 443, 65 So. 358, or in the number of other instances of like character found in the notes to Goupiel v. Grand Trunk Ry. Co., 30 A.L.R. 690.

■ As often stated in our cases, the act must be not only within the scope of his employment, but also committed in the accomplishment of objects within the line of his duties, or in or about the business or duties assigned to him by his employer. Illustrative cases are Wells v. Henderson Land & Lumber Co., 200 Ala. 262, 76 So. 28, L.R.A.1918A, 115; Republic Iron Co. v. Self, 192 Ala. 403, 68 So. 328, L.R.A. 1915F, 516. And much discussion of the essential elements of the relationship of master and servant is found in General Exch. Ins. Corporation v. Findlay, 219 Ala. 193, 121 So. 710; Birmingham Post Co. v. Sturgeon, 227 Ala. 162, 149 So. 74. The cases of Harrington v. Border City Mfg. Co., 240 Mass. 170, 132 N.E. 721, 18 A. L.R. 610, and Easler v. Downie Amusement Co., 125 Me. 334, 133 A. 905, 53 A. L.R. 847, concerned baseball played by employees out of working hours, and serve to demonstrate that no liability can be fixed upon the employer on the doctrine of respondeat superior. And to like effect, considering the Workmen's Compensation Act, Smith-Hurd Stats. c. 48, § 138 et seq., is the case of Becker Roofing Co. v. Industrial Comm., 333 Ill. 340, 164 N.E. 668, concerning an injury to an employee while attending a picnic, as was the custom to create and stimulate good fellowship.

■ Recognizing the force of these principles, as applied to the foregoing facts, plaintiff's counsel insist that the ball team and its entrance into the City League served as an advertisement scheme for defendant, and that so considered Priest, in driving the truck, was acting within the line and scope of his employment. And reliance is had upon the additional facts that the defendant's name was on the uniforms and on the truck, that the games were played before the public, and that Jackson, the president, on cross-examination, stated that he thought, for the purpose of making tax reports, the donations made to the team

were charged on the books to advertising. Jackson stated, however, that in any discussion as to the team no advertisement value to defendant was considered, and that he could see very little such value to it, and that the company made such donation in keeping with "its democratic attitude toward its employees, and encourages them in such things as sports and outside activities."

The fact that defendant's officials assumed such an attitude and displayed some interest in the health and happiness of the employees clearly is not to be weighed against the company, but they should rather be commended therefor. Answering a like suggestion the New York court in Stenzler v. Standard Gas Light Co., 179 App.Div. 774, 167 N.Y.S. 282, affirmed without opinion 226 N.Y. 681, 123 N.E. 891, involving the loan of a car, as here, to attend an outing, said (page 284):

"The respondent claims that the defendant was so interested in the good health and spirits of its employes that this outing may be said to have been a part of its business. But such an argument would practically abrogate the existing law on this subject in this state. An owner who gratuitously loans his car to a servant, or even to a member of his own family, for such person's own particular pleasure, presumably is interested in the pleasure, and, inferentially, in the good health and spirits, of such other person. And yet it cannot be doubted that such particular pleasure is not thereby made the employer's business in any legitimate sense of the words. The test of the employer's liability is such employer's business as distinguished from the employe's business or pleasure in using the car."

This discussion gives emphasis also to the fact that the initiation as to the outing came from the employees and not the employer,—a fact here appearing without dispute or contrary inference. Nor is the fact that defendant's name appeared on the truck to be considered as of any probative force upon the question as to whether or not defendant was in fact engaged in advertising its business in this manner. If so, the loan by the company of its car to an employee on Sunday to call on relatives, or attend a funeral, may as well be so denominated. The equipment, including uniforms, was purchased by the team manager, and as the team was that represent-

ing the employees of defendant company, it was entirely appropriate the uniforms should so disclose. The defendant had no part in the uniform selection. Jackson testified Edwards (presumably the bookkeeper) had charged the donations on the books to advertising. But this was for the purpose of getting credit in tax matters, with perhaps some foundation when considered as a mere incident, and of itself is not sufficient to discredit his positive testimony that the matter of any advertising advantage was never considered. Jackson does not deny there may not have been some slight value to the company if the team made a good showing. And in a sense it may be conceded that some character of advertisement advantage may accrue to any business or industrial plant by such a team. So likewise would the loan of defendant's car or truck with its name emblazoned thereon, perhaps be of some value as an advertisement, if the employee used it for his own personal use and attended some outing largely attended. The illustrations differ only in degree and not in kind. And yet it could not be said that such an act of courtesy amounted to an advertisement of the employer's business so as to constitute the driver his servant or agent, and held accountable for his acts on the doctrine of respondeat superior.

If Priest, in the instant case, was the servant or agent of defendant company while driving the car to the ball game during non-working hours, upon the theory he is engaged in advertising the defendant's business, then each member of the ball team would likewise be such servant or agent and the defendant likewise accountable for the negligent conduct of each, though defendant had no supervision or control in any manner over the team or any member thereof or over the method of their play, and though many members of the team were never in its employ. And it may readily appear that any such conclusion would seem, not only to discourage co-operation of employers in such sport activities, but in practical effect to prohibit it entirely.

The Iowa court in Reynolds v. Buck, 127 Iowa 601, 103 N.W. 946, treating a case involving the question of incidental advertisement, said (page 947): "The mere fact that the automobile still wore the decorations, and that it might on account thereof attract attention, and incidentally advertise the defendant's business, would not have justified the jury in finding that the son was about his father's business at the time. An inference so farfetched should not be permitted to control and destroy direct and positive testimony to the contrary."

We think these observations applicable here. Any such advertisement was purely incidental, and any inference to the effect that defendant was engaged in the business of its advertisement on this occasion would not only be unreasonable, but, as the Iowa court expressed it, "farfetched," and not resting upon any substantial basis.

Plaintiff cites our case of Hackney v. Dudley, 216 Ala. 400, 113 So. 401, to the end that if defendant's liability cannot be rested upon the doctrine of respondeat superior, recovery may be had upon the theory the parties were in the prosecution of a joint enterprise. But the facts in the Hackney Case, supra, are wholly different, and we think that what has been said suffices to disclose our view that such a theory is here untenable.

Plaintiff also cites Shotts v. Standard Oil Co., 181 Minn. 386, 232 N.W. 712, in support of his theory of liability upon the doctrine of respondeat superior. But there the car being operated was specially built for advertising purposes and was being driven by defendant's advertising manager at the time of the accident. And the case of Ackerson v. Jennings Co., 107 Conn. 393, 140 A. 760, 56 A.L.R. 1127, likewise concerned a general manager of one of defendant's branch places of business with facts dissimilar to those here presented. And the Kentucky court in Ashland Coca Cola Bottling Co. v. Ellison, 252 Ky. 172, 66 S.W.2d 52, made the observation that the character of employment may have an important bearing upon the weight to be accorded the evidence concerning the matter of agency, making a distinction between one given general management and a minor employee with limited duties and authority.

We think that no reasonable inference may be drawn from the evidence conflicting with the defendant's positive evidence that any interest taken in the ball team was only in a spirit of co-operation, and that the matter of advertisement was given no consideration.

Our conclusion is that defendant was due the affirmative charge, as requested, and

for its refusal the judgment should be reversed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.