71 So.2d 802

**WOOTEN et al. v. RODEN et al.**

**7 Div. 100.**

Supreme Court of Alabama.

March 18, 1954.

Rehearing Denied April 22, 1954.

Roy D. McCord, Gadsden, and Max J. Howard, Fort Payne, for appellants Wooten.

Lusk, Swann & Burns, Gadsden, and L. L. Crawford, Fort Payne, for cross-appellant Hardware Mut. Cas. Co.

608

Davies & Williams, Birmingham, for appellee Fidelity & Casualty Co.

Beddow & Jones, Birmingham, for appellees Roden.

LIVINGSTON, Chief Justice.

This proceeding is for a declaratory judgment of the Circuit Court of DeKalb County, Alabama, sitting in equity. The principal question to be determined is whether or not an injury suffered by Oscar Ray Wooten is controlled by the Workmen's Compensation Act of Alabama. Code 1940, Tit. 26, § 253 et seq. The final decree rendered in the court below was, in substance, to the effect that Wooten, one of the appellants herein, was injured in an accident "arising out of and in the course of" his employment. The appeal is from that decree.

 The evidence was taken as in chancery cases. As a consequence, no presumption is here indulged as to the correctness of the decree of the trial court. In substantial effect, the evidence is without material conflict and shows the following:

Jerry Roden operated a business known as the Boaz Creamery, located at Boaz, Alabama, and another division of the same business known as the DeKalb Creamery, at Fort Payne, Alabama. Both creameries were engaged in selling milk products at wholesale and at retail. More than eight persons worked as employees of Jerry Roden in said business.

The DeKalb Creamery operated a dairy bar from which dairy products were sold

at retail. Oscar Ray Wooten was employed to operate the soda fountain and to do other work incidental to retail sales at the bar. He was paid $20 per week.

Paul Roden, the son of Jerry Roden, served as general manager of the creamery located at Fort Payne.

Shortly before Christmas of 1948, Jerry Roden decided to give a supper party at the Palace Cafe in Boaz. His guests were to be all of his male employees from both divisions. The party was to be held the night of December 23. After the supper, Jerry Roden was to pass out Christmas gifts to all of his employees. All employees, whether they attended the party or not, were to receive gifts. No employee was required to go to the party. No deduction was to be made from the wages of anyone who did not attend. Employees were not to receive any additional compensation for attending, nor was any employee to gain an advantage of any sort for attending. In short, attendance was without compensation or request, purely voluntary upon an invitation. Jerry Roden told his son, Paul Roden, to extend the invitation to all male employees at the Fort Payne division. Sales, office and production personnel were all invited, except for the few girls who worked in the office.

Wooten left Fort Payne to attend the Christmas party in an automobile driven by Paul Roden. Said automobile was owned by Jerry Roden, and was furnished by him to Paul Roden to be used in connection with the business of the DeKalb Creamery, as well as for Paul's own personal use. While being driven on a direct route between Fort Payne and Boaz, this automobile, occupied by Paul Roden, Wooten, and two others, was involved in a collision with another car. As a result, Wooten was seriously and permanently injured.

Wooten's regular working hours were from 10:00 a. m. to 9:00 p. m. On the date of the accident, however, both creameries were closed early, and at the time of the collision (approximately 6:00 to 6:30 p. m.) no employees of either creamery were expected to be on the job.

The evidence shows that Wooten's salary continued to be paid to him for three months subsequent to the accident. Also, Jerry Roden paid medical expenses incurred by Wooten in the amount of $3,220.

On the date of the accident, Hardware Mutual Casualty Company was the workmen's compensation insurer for Jerry Roden and for the DeKalb Creamery. The Fidelity and Casualty Company of New York was the insurer of the automobile involved for public liability purposes.

Jerry Roden testified that he had planned to discuss the business, and to praise his employees for their past year's work, but that any such discussion or praise was not the reason for giving the party.

The expenses of the supper were to be paid by the business, and were placed on the books as business expenses for income tax purposes.

One employee testified that prior to Dec. 23, 1948, he had understood Jerry Roden to say that the supper party was to serve as a business meeting as well as for pleasure.

The issues upon which this appeal is founded are easily stated:

(1) Must any action for damages based upon the injuries suffered by Oscar Ray Wooten necessarily be governed by, or limited by, the terms of the Workmen's Compensation Act of Alabama, so as to obligate Hardware Mutual Casualty Company to defend any such action at law?

(2) Is the Fidelity and Casualty Company of New York obligated to defend any such action at law?

(3) Pending final disposition of this suit, should further prosecution of any such actions for damages at law be enjoined?

We are of the opinion that (1) must be answered in the negative, and that (2) and (3) must be answered in the affirmative.

Title 26, § 262(j) of Code of Alabama 1940, which defines the meaning of the phrase "injuries by an accident arising out of and in the course of his employment,"

as used within our Workmen's Compensation Act, states the following:

"Without otherwise affecting either the meaning or interpretation of the abridged clause, injuries by an accident arising out of and in the course of his employment, it is hereby declared; Not to cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service at the time of the accident, and during the hours of service as such workmen, * * *."

■ Subsection (j) was borrowed from the compensation law of Minnesota, Laws of Minnesota 1921, C. 82, M.S.A. § 176.01 et seq., and is presumed to have been adopted in Alabama with the construction theretofore given it by the courts of Minnesota. See Ex parte American Fuel Co., 210 Ala. 229, 97 So. 711.

The phrase "arising out of" employment denotes employment as the source and cause of the accident. We have stated that in order to satisfy this requisite the rational mind must be able to trace the resultant injury to a proximate cause set in motion by the employment and not otherwise. Alabama Pipe Co. v. Wofford, 253 Ala. 610, 46 So.2d 404.

We have made a thorough search of the authorities of both Minnesota and Alabama. Having done so, we are of the opinion that no case has been decided in either Minnesota or Alabama, upon facts similar to those now before us, where the issue involved has been the interpretation of the aforesaid phrase. We must refer ourselves to the holdings of other jurisdictions which have been determined upon similar factual situations.

■ As stated previously, the principal question presented is whether Wooten's injury arose out of and in the course of his employment. The solution of questions of this character must depend upon the particular facts and circumstances; no exact formula can be set forth which will automatically solve every case. Prayther v. Deepwater Coal & Iron Co., 216 Ala. 579, 114 So. 194; Benoit Coal Mining Co. v. Moore, 215 Ala. 220, 109 So. 878.

The Minnesota Court, prior to the adoption of the Alabama act, construed similar or exact language as that quoted above from Tit. 26, § 262(j), Code of Alabama 1940, as interposing an expression in the nature of a limitation of the general phrase "arising out of and in the course of employment". Nesbitt v. Twin City Forge & Foundry Co., 145 Minn. 286, 177 N.W. 131, 132, 10 A.L.R. 165; State ex rel. Duluth Brewing & Malting Co. v. District Court of St. Louis County, 129 Minn. 176, 151 N.W. 912. This view of the effect of such language was accepted in Ex parte Majestic Coal Co., 208 Ala. 86, 93 So. 728.

■ Upon considering the meaning of the complete expression "arising out of and in the course of his employment," and of its separate component parts, it should be observed that while an accident arising out of an employment usually occurs in the course of it, such is not invariably true. Likewise, an accident which occurs in the course of an employment does not necessarily arise out of it. The words "arising out of" involve the idea of causal relationship between the employment and the injury, while the term "in the course of" relates more particularly to the time, place and circumstances under which the injury occurred. The phrases are not synonymous; where both are used conjunctively a double condition has been imposed, and both terms must be satisfied in order to bring a case within the act. 58 Am.Jur. 717. Generally, an injury arises out of an employment only when there is a causal connection between the injury and the conditions under which the work is required to be performed.

Courts in other jurisdictions which have passed upon the compensability of injuries sustained outside the formal scope of the employee's duties have evolved a number of criteria which may be resorted to in determining whether the employment and the recreation are related with sufficient

closeness to be held within the terms of workmen's compensation acts. For convenience, they were enumerated in Moore's Case, 330 Mass. 1, 110 N.E.2d 764, 766, as follows:

> "(1) The customary nature of the activity. * * * (2) The employer's encouragement or subsidization of the activity. * * * (3) The extent to which the employer managed or directed the recreational enterprise. * * (4) The presence of substantial pressure or actual compulsion upon the employee to attend and participate. * * * (5) The fact that the employer expects or receives a benefit from the employees' participation in the activity, whether by way of improved employer-employee relationships, * * *; through greater efficiency in the performance of the employees' duties, * * *; by utilizing the recreation as partial compensation or additional reward for their work, or for advertising the employer's business, or as an actual adjunct of his business. * * * Apart from the existence of employer compulsion, which often might warrant or even require a finding in favor of the employee, the presence or absence of any one of the other factors listed would not necessarily determine the issue. Nor, indeed, is the foregoing enumeration meant to be exclusive of other factors which might appear in a given case. What is required in each case is an evaluation of the significance of each factor found to be present in relation to the enterprise as a whole. Upon such an evaluation must the decision as to the closeness of the connection between the employment and the recreation ultimately rest." (Citations omitted.)

[redacted] To justify recovery under the Workmen's Compensation Act, the rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency. Garrett v. Gadsden Cooperage Co., 209 Ala. 223, 96 So. 188; Madden's Case, 222 Mass. 487, 111 N.E. 379, L.R.A.1916D, 1000.

[redacted] F. Becker Asphaltum Roofing Co. v. Industrial Commission, 333 Ill. 340, 164 N.E. 668, 669, is quite similar to the case at bar. There, the plaintiff's duty was to put on roofing and to supervise the work of other roofers. An annual picnic for the employees was held for the purpose of "creating a good feeling among them, boosting their morale, and aiding business." The day of the picnic was a holiday. The employees and their families were asked to attend. Plaintiff was injured while on his way to the picnic. The Supreme Court of Illinois, in holding that the injury did not come within the provisions of the compensation act, stated the following:

> "The injury contemplated by the act must have had its origin in some risk of the employment. It must arise out of and in the course of the employment or be incident thereto. * * A risk is incident to the employment when it belongs to or is connected with the duties a workman has to perform under his contract of service. * *
>
> "It is not enough that the injured person may be present at the place of the accident because of his work, unless the injury is the result of some risk of the employment."

In Berry v. Colonial Furniture Co., 232 N.C. 303, 60 S.E.2d 97, 100, the claimant was employed by the defendant company as a credit manager. At the time of his employment it was understood and agreed that the company did not carry hospitalization insurance for the benefit of its employees, but that as a matter of good will and personal relations among the employees, the latter were given a trip to the seashore each year at company expense. The trip was even understood and agreed to be partial consideration in connection with the employment. The defendant employer provided a company truck and placed therein mattresses and other equipment to make the same comfortable for both riding and sleeping purposes. While the employees were being transported in the truck to a point from which they were to go deep-sea fishing, all of which was to be paid for by the defendant company, claimant fell to

the roadway and received serious injuries. The commissioner held said injury to be within the compensation act, mainly for the reason that the trip in question was held out as a part of the remuneration and as an inducement to employment. The Supreme Court of North Carolina, however, held that there must be some causal connection between the injury and the employment, in reversing the award granted by the Industrial Commission. In so holding, the court stated:

"* * * it is obvious that the outing, or fishing trip, 'after the store had closed for the day's work' on Saturday, is not incidental to claimant's employment. * * * Business hours were over. The trip was for pleasure, and not for business."

The facts of the Berry case, supra, in our opinion, presented a much stronger argument for being within the terms of a compensation act than those now before us. There, the trip in question was held out as a part of the remuneration and as an added inducement to employment. Even that argument is not present in the case at bar.

The appeal of Barber v. Minges, 223 N.C. 213, 25 S.E.2d 837, 839, arose in the same manner as in the present case. The question was whether the plaintiff's demand was or was not within the exclusive jurisdiction of the Industrial Commission under the terms of the workmen's compensation act. There, the employee was again merely invited to attend the employer's annual Sunday good-will outing; the employee did not work on the outing, and was not under the employer's control. Death of plaintiff's intestate resulted from burns received when a fishing boat was set on fire due to the explosion of gasoline vapors. The court held that the relation of master and servant did not exist between the parties at the time of the accident. Within the court's opinion, the following is stated:

"The incidence of the law is on the status created by the contract of employment. It deals with the incidents and risks of that employment, in which concededly is included the negligence of the employer in that relation. It has no application outside the field of industrial accident; and does not intend, by its general terms, to take away common law or other rights which pertain to the parties only as members of the general public, disconnected with the employment. 'The relation of master and servant and their mutual rights and liabilities is the primary concern of the compensation acts. * * *'" (Emphasis added.)

Thus, under the realistic view advanced by Justice Seawell as to the contract of employment, the court refused to hold that the master-servant relation is evoked by the social gesture when the employee attends a good-will picnic at the invitation of the employer.

Stout v. Sterling Aluminum Products Co., Mo.App., 213 S.W.2d 244, 246, supports the same realistic view. In that case, also, an annual picnic was sponsored by the employer for its employees. The employees were under no obligation to attend the picnic, and whether they attended or not, they were paid no wages for the day. There was evidence that the purpose of the picnic was to create good will and make fellowship among the employees. While leaving the picnic grounds, the employee fell and injured his knee. In determining whether the injury arose " 'out of and in the course of his employment,'" the Missouri Court emphasized that by the very nature of things no set formula can apply to all such similar cases. and that every such case must be decided upon its own particular facts and circumstances. The well-reasoned opinion stated the following as to the scope of the Missouri Compensation Act, V.A.M.S. § 287.010 et seq.:

"The relationship of master and servant must exist in any case to make it compensable, and when that relationship ceases to exist, whether temporarily or permanently, the liability of the employer for accidental injury to the employee ceases to exist. * * *

"The speculative and intangible benefits the employer might or could obtain from the creation of good will

among the employees or between the employer and the employees, standing alone, would be insufficient to sustain respondent's argument to the effect that the relationship of master and servant existed during the day of the picnic. The employer had no control whatever over the conduct and actions of the employee while at the picnic; or over what route the employee traveled in going to or from the picnic. * * And the *controlling gist* of the cases *where compensation has been allowed* is that where the *employer requires the attendance of the employee at a picnic or recreation* away and apart from its business, or *pays wages* to the employee *on the condition of his attending* such recreation, the benefits of the compensation law are extended to the employee, not because he is performing his regular work, but because for pay he is engaged in fulfilling the employer's requirements. *To extend* the benefits of the law *further* than that would be legislation by judicial construction." (Emphasis added.)

Though the factual situation is not quite so analogous to our present case as some heretofore cited, Pate v. Plymouth Mfg. Co., 198 S.C. 159, 17 S.E.2d 146, is further persuasive authority upon the issue in controversy. An employer which operated a textile mill gave financial assistance to a baseball team formed by some of the employees. The players practiced and played on their own time and received no extra compensation from the employer. The claimant, a doffer in the mill, was injured in an automobile accident which occurred while he was returning from a game in which he had participated. Defendant company had furnished the initial equipment (gloves, bats, uniforms) for the team. At the end of each season, said equipment was collected and placed in storage. The Supreme Court of South Carolina held such an injury to be without the scope of its workmen's compensation act.

The argument advanced in Auerbach Co. v. Industrial Commission, 113 Utah 347, 195 P.2d 245, 248, in support of the commission's award was much more persuasive than that now before us. There, the company, as a part of its internal organization, had a department 65 which was concerned wholly with athletic teams sponsored by the company. The company's public relations officer was in charge of said department. All expenses of the team were paid by the company, and any receipts from the efforts of the athletic teams, such as gate receipts and prize money, were paid into the company's general fund. The company received valuable advertising, and promoted the good will of the public and its employees through these teams. Claimant, the company's cashier, was injured in an automobile accident while on a trip to play for one of the teams. Nevertheless, the Supreme Court of Utah denied recovery within the terms of its compensation act. Justice Wolfe, having cited a group of cases under which compensation had been allowed upon similar facts, stated as follows:

"These cases, in general, support the view that where the employee is engaged in social, athletic, or recreational activities sponsored by his employer, and the employer benefits, even indirectly, from such activities, and the employee is injured while engaging in such activities, or while travelling to or returning to his home from such activities, then he is entitled to compensation.

"*The fallacy of this view is that the test of the employer-employee relationship is not whether* or not *the purported employer is benefited* by the actions of the purported employee. A person or *business organization may be materially benefited by an independent contractor, or by a volunteer.* * * *

"* * * * the fundamental test of employer-employee relationship is right of control."* (Emphasis added.)

Jett v. Turner, 215 Ala. 352, 110 So. 702, is readily distinguishable from the case at bar, and is of little aid, if any, in the determination of this appeal. There, the employee was being transported from his place

of work to his home by the employer as a part of the contract of employment.

Ex parte Louisville & Nashville R. Co., 208 Ala. 216, 94 So. 289, 292, is also clearly distinguishable. At the time of the injury there involved, the employee was still on the employer's premises. The employee's actual services had terminated. While leaving the premises, he stumbled and broke his leg, which subsequently resulted in his death. Quite obviously, such facts do not even remotely resemble those now before us. Said case, however, is of some relevancy in that it incorporated into the law of this state the following rule concerning the scope of our compensation act:

"'In general it may be said that the act was intended to apply in cases *where the relation of master and servant exists.*'" (Emphasis supplied.)

The above generalization had previously been stated in Lienau v. Northwestern Tel. Co., 151 Minn. 258, 186 N.W. 945, and referred to a Minnesota act which was practically identical with that which our act is based upon.

Our conclusion that the injury in controversy is not governed by, or limited by, the terms of the Workmen's Compensation Act of Alabama in no manner conflicts with Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666. There, the facts did not resemble those of the instant case. That case presented an entirely different problem, and was determined upon reasoning here not applicable. The same must be said of Blair v. Greene, 247 Ala. 104, 22 So.2d 834, although the case is authority for the proposition that an injury which arises out of transportation in no manner a part of the employment contract is without the scope of our compensation act. Thus, if Blair v. Greene, supra, has any effect upon the instant controversy, it only serves to buttress this opinion.

Hamilton Motor Co. v. Cooner, 254 Ala. 422, 47 So.2d 270, likewise is not in point. In that case, the employee was performing a definite *service* for his employer, which was naturally related to the employer's business. It was an act of service which

reasonable judgment would refer to the express or implied element of the contract of employment. No such service was involved in the case at bar.

In Wells v. Morris, 33 Ala.App. 497, 35 So.2d 54, the factual situation not only suggested but invited the heating of coffee from which the claimant's injury proximately resulted. There, the injury was reasonably related to the employment.

Perfection Mattress & Spring Co. v. Windham, 236 Ala. 239, 182 So. 6, is clearly distinguishable from the instant case, and has little, if any, controlling effect. The Workmen's Compensation Act was not even involved in that case; it was decided purely on principles of the common law. Within that opinion, however, Justice Gardner does evidence approval of F. Becker Asphaltum Roofing Co. v. Industrial Commission, 333 Ill. 340, 164 N.E. 668, which we have previously discussed.

Le Bar v. Ewald Bros. Dairy, 217 Minn. 16, 13 N.W.2d 729, is not analogous to the instant problem. In that case, the dairy had displayed numerous activities in athletics for more than ten years. Such activities, which produced widespread advertising, might possibly be deemed an essential part of their business. Obviously, however, the factual situation presently before us is different from that which was ruled upon by the Minnesota Court. We must determine this appeal upon an entirely different line of reasoning.

Linderman v. Cownie Furs, 234 Iowa 708, 13 N.W.2d 677, is also distinguishable. The sales manager of the fur company annually arranged contests between his salesmen in pick-up for storage work. The company owned a cabin at Lake Vermillion in Minnesota. Contest winners were given a fishing trip to said cabin at the company's expense. The sales manager had even written letters to salesmen, exhorting them to greater efforts if they cared to go on the fishing trip. Claimant had been a contest winner, and was accidently drowned in the waters of the lake. Obviously, the contest was designed to promote sales; the salesmen were pursuing their master's busi-

ness when they entered into the contest and tried to make it a success. The entire scheme was of intended benefit to the employer.

Stakonis v. United Advertising Corp., 110 Conn. 384, 148 A. 334, 337, does not conflict with this opinion. The Connecticut Court, which allowed an award, expressly stated:

> "We may well commend whatever benevolent purpose the employer had in instituting this outing as a feature of its business, but *we cannot fail to note the distinction between a mere invitation to enjoy the hospitality of the employer and a direct order to attend with the imposition of a penalty for the disobedience of that order.*" (Emphasis added.)

Decisions of a few cases, admittedly, are contra to the conclusion which we have reached. Miller v. Keystone Appliances, Inc., 133 Pa.Super. 354, 2 A.2d 508, 509, is one such case. There, the employee was injured in a collision between his automobile and a bus. As a result of the accident, he died two days later. At the time of the accident, the deceased was driving his own automobile, and was returning to his home from a picnic which had been given by his employer. He was employed as a salesman. The court found " 'that the picnic was for the purpose of having the employees get together, have a good time, become better acquainted and to have better cooperation in the work of defendant company.' " The company furnished no transportation to or from the picnic grounds. All employees received notice of the picnic, but attendance was not compulsory. Deceased's immediate superior, however, had told the salesmen under his supervision that he "wanted them to be there." Based upon such facts, the Pennsylvania Court concluded that the deceased "was told to attend," that the "importance of sustaining the morale of any organization cannot be ignored," and that an award should be allowed under its compensation act. The holding of the Pennsylvania Court, in our opinion, is questionable, to say the least, and is not at all per-suasive. Fagan v. Albany Evening Union Co., 261 App.Div. 861, 24 N.Y.S.2d 779, allowed an award upon similar reasoning.

This opinion in no manner conflicts with our recent decision in the case of Wilson & Co., Inc., v. Curry, 259 Ala. 685, 68 So.2d 548.

■ The lower court held that the Fidelity and Casualty Company of New York is not obligated under its contract to defend the actions at law for damages which are based upon the injuries suffered by Oscar Ray Wooten. With that conclusion, we are not in agreement.

The policy of the aforesaid company states the following:

> "This policy does not apply:
>
> "(d)  *  *  *  to bodily injury to or death of any employee of the insured *while engaged in the employment,* other than domestic, of the insured. * * *" (Emphasis supplied.)

Wooten was not "engaged in the employment" at the time he was injured. Therefore, exclusion (d) cannot be relied upon by the Fidelity and Casualty Company of New York to excuse it from its due and legal obligation.

■ The lower court committed no error in its provision for the granting of a temporary injunction pending the final disposition of this suit. United States Fidelity & Guaranty Co. v. Hearn, 233 Ala. 31, 170 So. 59. Such action by the court served only to preserve the status quo.

For the errors heretofore discussed, the decree of the court below is reversed, and said court is hereby ordered to enter a decree in conformity with this opinion.

Reversed and remanded.

LAWSON, STAKELY and MERRILL, JJ., concur in the results.