This is an employee benefits case.
The Board of Managers of the City of Birmingham Retirement and Relief System (Board) denied the employee's application for extraordinary disability benefits. The circuit court via writ of mandamus ordered the Board to award the employee extraordinary disability benefits.
The Board appeals, and we affirm.
The dispositive issue is whether the trial court erred to reversal by concluding that the Board was manifestly wrong in finding that the employee was not entitled to extraordinary disability benefits.
We note at the outset that employees of cities with populations in excess of 250,000, like the employee in this case, are not covered by workmen's compensation. See § 25-5-13, Ala. Code (1975) (1986 Repl.Vol.). Such employees are covered, however, under Ala. Acts 1973, Act No. 1272, at 2124 (Pension Act).
Two provisions of the Pension Act are pertinent to the resolution of this case: the section which provides for when employees are entitled to extraordinary, rather than ordinary, disability benefits; and the section which provides for the standard of review in appeals taken from determinations of the Board.
Section 8 of Article VI of the Act provides that a municipal employee is entitled to extraordinary disability benefits when he "shall become totally disabled to perform his customary duties by reason of personal injury received as a result of anaccident arising out of and in the course of the employment . .. and occurring at a definite time and place." Ala. Acts 1973, Act No. 1272 at 2142-43 (emphasis supplied).
Section 11 of Article III of the Act provides that the initial review of Board determinations is by mandamus in the circuit court. The Act provides that the standard *Page 1021 
of review to be used in such proceedings is as follows:
 "If the submission in the mandamus proceedings is solely upon the proceedings before the Board, the decision of the Board upon all matters of fact shall be final and conclusive, unless it affirmatively appears that its decision is plainly and manifestly wrong.
 "If in the Circuit Court evidence is received, in addition to that considered by the Board, the decision of the Board upon all matters of fact shall, nevertheless, be final and conclusive, except to the extent limited by the next following sentence. If the Circuit Court after hearing all the evidence offered determines that had the decision rendered by the Board been rendered after hearing such evidence that such decision would not have been manifestly wrong, then the Circuit Court shall sustain the decision of the Board, and if the Circuit Court, after considering all the evidence, determines that the decision rendered by the Board would have been manifestly wrong had such decision been rendered after considering all the evidence considered by the Circuit Court, then in that event the Circuit Court shall render the decision which that Court concludes should be rendered on all the evidence considered by that Court."
Ala. Acts 1973, Act No. 1272 at 2135-36 (emphasis supplied).
The Board rendered its decision in this case without a hearing on the matter. All of the testimony, therefore, was heard at the level of the circuit court only. Nevertheless, as the trial court found, there was no dispute as to the material facts in the case.
Where the facts are not in dispute, no presumption of correctness attaches to the court's determination, and the inquiry is limited to whether the relevant law was correctly applied to the undisputed facts. Gaston v. Ames, 514 So.2d 877
(Ala. 1987).
Thus, the dispositive issue in this case is whether the Board was manifestly wrong in concluding that the employee's accident did not arise out of and in the course of the employment had it considered the evidence that was presented to the trial court.
The trial court made the following findings of fact regarding the accident in question:
 "1. The Plaintiff was employed by the Birmingham Fire Department on January 20, 1975.
 "2. At the time the Plaintiff sustained his injury, August 21, 1986, he was assigned to Station 21. The firemen work shifts of 24 hours on and 48 hours off. When on duty, the firemen must be in uniform before 8:00 a.m. They then perform various functions related to their duties (radio checks, cleaning and checking fire fighting equipment, cleaning the station, receiving instructions and holding inspection) until approximately 4:00 p.m. After 4:00 p.m., if they are not actually on a call, the firemen are allowed free time during which they may exercise, read, watch television or do practically anything so long as they remain at the station and are ready to respond to a call if one comes in.
 "3. On August 21, 1986, during the Plaintiff's 24 hours on duty, and after 4:00 p.m., the Plaintiff and other firemen, including his supervisor, Lt. Doss, were playing basketball at the station. During the basketball game the Plaintiff sustained a serious injury to his knee. As a result of the injury, the Plaintiff is totally disabled to perform his customary duties as a fireman.
 "4. The basketball goal in use at the time of the accident was on the station property and had been erected at the individual firemen's expense in the middle of 1985 with the knowledge and consent of the authorities in the Birmingham Fire Department. Chief Gallant testified that several stations have basketball goals, including Station 1 where he is headquartered, and that shooting basketballs is a permitted activity during the free time firemen have while on duty.
 "5. The Court finds that exercise of some form is encouraged and that basketball is a sanctioned form of exercise. *Page 1022 
It is, however, a voluntary form of exercise and no one is required to participate."
(Emphasis supplied.)
From those facts the trial court concluded that the employee's injury fell within the meaning of the phrase "arising out of and in the course of . . . employment" and, therefore, held that the Board was manifestly wrong in denying the employee's application for extraordinary disability benefits.
The Board's main contention on appeal is that the trial court erred in its application of the relevant law to the undisputed facts. We disagree.
The cases that the Board cites for the proposition that accidents resulting from a recreational activity such as basketball do not arise out of and in the course of the employment are distinguished on the facts from the case at bar. For example, one case concerns a basketball game that was played after the hours of employment. St. Paul Insurance Co. v.Harris, 758 F.2d 1450 (11th Cir. 1985). Another case is cited for the proposition that, where there is no direct benefit to the employer, an injury is not incurred in the course of employment. City of Tampa v. Jones, 448 So.2d 1150
(Fla.Dist.Ct.App. 1984).
As the trial court's judgment in this case indicates, the activity which caused the employee's injury occurred during working hours and was an activity that was encouraged by the employer and served as a form of exercise that was sanctioned and, therefore, a benefit to the employer.
As the treatises make clear, the better reasoned view in cases of this nature is that the injury was the result of an accident arising out of and in the course of the employment.
Professor Larson states the following:
 "Recreational or social activities are within the course of employment when
 "(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
 "(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
 "(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life."
1A A. Larson, The Law of Workmen's Compensation § 22.00, at 5-82 (1985).
Professor Larson also makes the following pertinent commentary regarding cases such as the one at bar:
 "Two overt physical indicia of course-of-employment, time and place, are of unusual potency in identifying an activity with the employment. If both are present, that is, if the game is played on the premises during a lunch or recreation period, compensability has been seen to be clear. But even if only one of the two elements is present, the case has made a very strong start. Thus, if the game is played outside hours, the fact that it is played on the premises is a heavy — although not necessarily decisive — weight on the side of coverage, and may offset a serious deficiency in some other component of the case."
A. Larson, § 22.24 (b) at 5-139 and -140 (emphasis supplied).
The accident in this case occurred on the premises during the hours of employment and thus meets Larson's two criteria for an accident arising out of and in the course of the employment.
The following quotation is also pertinent:
 "Although there is authority to the contrary, compensation has been awarded for an injury suffered by an employee while engaged in a recreational activity where such activity, by its consistency and regularity has become an incident of the employment, as in the case of ball games regularly played on the employee's premises during lunch or other nonworking periods. Indeed, it has been indicated that where the employee is required to remain in a particular place with no duties to perform, compensation *Page 1023 may be awarded for an injury suffered in any reasonable recreational activity that the employee may engage in while waiting."
99 C.J.S. Workmen's Compensation § 221, at 738 (1958) (emphasis supplied).
It seems clear that the particular circumstances of the accident in this case — that it was caused by a sanctioned form of exercise during a period of employment when such activity was regularly performed — bring the injury within the requirements of the Pension Act, so that the employee is entitled to extraordinary disability benefits. To the extent that the Board determined otherwise, its judgment was manifestly wrong, and the trial court correctly ordered the Board to reverse its denial of the employee's application for extraordinary benefits.
Finally, the Board contends that the trial court erred by using workmen's compensation cases as the basis for interpreting the "course of employment" language in the Pension Act. We disagree.
In Norris v. Seibels, 353 So.2d 1160 (Ala.Civ.App. 1977), we cited a workmen's compensation case in denying extraordinary disability benefits under the Pension Act. Surely the identical language found in the Pension Act and the Workmen's Compensation Act and the similar purposes which those laws serve are reason enough to argue by analogy using workmen's compensation cases to construe the language at issue. We find no reversible error here.
In short, it was a condition of his employment that the employee remain on the premises for the duration of his twenty-four hour shift. During certain hours of that shift he was permitted and encouraged to engage in the activity that resulted in his injury in this case. The very nature of a firefighter's job — long hours of waiting followed by emergencies calling for heavy, physical exertion and action of a very dangerous nature — suggests why the employer might put a premium on and encourage the sort of activity that caused the accident in this case and, therefore, strengthens the conclusion that the trial court was correct in determining that the employee's accident arose out of and in the course of his employment in this case. See Carraway Methodist Hospital v.Pitts, 256 Ala. 665, 57 So.2d 96 (1952).
This case is due to be affirmed.
AFFIRMED.
BRADLEY, P.J., and INGRAM, J., concur.