This case involves post-divorce proceedings and, in particular, the payment of post-minority support for college education.
We note, at the outset, that this is the second time that this case has been before us. In Ex parte Bayliss,550 So.2d 986, 987 (Ala. 1989), the supreme court held that "[i]n Alabama, . . . a trial court [has] jurisdiction to require parents to provide post-minority support for college education to children of a marriage that has been terminated by divorce." In compliance with the supreme court's opinion, this case was reversed and remanded to the trial court for proceedings consistent with that opinion. 550 So.2d 996. On remand, the trial court *Page 1119 
ordered John Martin Bayliss III (father) to pay an amount equivalent to room, board, books, tuition, and necessary fees at Auburn University beginning with the winter term which started in January 1990 (the last three semesters of college) for his son, Patrick Bayliss. Cherry R. Bayliss (mother) appeals. We affirm in part, reverse in part, and remand.
Although the mother raises a number of contentions, we find the dispositive issue to be whether the trial court abused its discretion in requiring that the father pay post-minority support for a college education at the cost of an in-state, public school for only the last three semesters of college when Patrick had been attending a private, out-of-state school for two and one-half years.
We further note that, where evidence is presented ore tenus, the trial court's judgment is presumed correct unless it is so unsupported by the evidence that it is plainly and palpably wrong. Coby v. Coby, 489 So.2d 597 (Ala.Civ.App. 1986). However, where there is no factual dispute, there is no presumption of correctness which attaches to the court's determination, and, therefore, our inquiry is limited to whether the relevant law was correctly applied to the undisputed facts. Birmingham Retirement Relief System v.Elliott, 532 So.2d 1019 (Ala.Civ.App. 1988). Additionally, matters of child support rest within the trial court's discretion and will be reversed only upon a showing that it has abused its discretion or that its determination is plainly and palpably wrong. Brannon v. Brannon, 477 So.2d 445
(Ala.Civ.App. 1985).
The record reveals that Patrick was one of two children born of the marriage and that the mother and the father were divorced in 1982. In January 1988, the mother filed a petition to modify, requesting increased alimony and increased child support for Patrick, then age 18. In March 1988, when Patrick had attained the age of 19, the mother amended her petition, seeking payment for Patrick's college education from the father. Patrick began attending Trinity College in the fall of 1987.
Testimony from the first hearing, which was held on May 23, 1988, reveals that the mother receives $36,000 per year in alimony, and that in 1987, she received an additional $4,000 in income from investments and earned approximately $2,000 from a business selling clothes out of her home. The mother also sold a portion of the land that she received with the marital home for $20,000 and increased the mortgage on the marital home by $50,000. The sums from the sale of the land and remortgage of the home were invested and have been used to send Patrick to Trinity College in Hartford, Connecticut. The testimony further reveals that the father's total income was $372,245 for 1986, $320,731 for 1987, and $411,968 for 1988, and that a portion of the stated income includes undistributed partnership profits. The father has refused Patrick's requests for financial help, has refused to co-sign for a loan in Patrick's name, and has not directly contributed to the cost of Patrick's college education.
Patrick testified that he discussed Trinity College and Washington and Lee University with his father after visiting twenty-three schools and before applying to Trinity College, but that he did not discuss college choices with his father after his father refused financial support for college. The father testified that he did not object to Trinity College, that Patrick never discussed entering Trinity College with him, and that he had stated that he might help Patrick with college, but only after the mother had exhausted her funds.
At the hearing on remand, which was held on January 12, 1990, it was stipulated that Patrick was in the middle of his junior year at Trinity College; that the cost per year for tuition, room, board, fees, and student activity was $17,000 and the cost for indirect expenses was $5,500, for a total cost of $22,500 a year; that the mother has paid for all but $2,500 per year, which Patrick receives from a student loan; that Patrick does well at Trinity College and that his grades were A's and B's; and that the father has "the financial ability to respond to Patrick's needs." *Page 1120 
The record indicates that there was no factual dispute between the parties; therefore, we must now determine whether the trial court correctly applied the relevant law to the facts and whether the judgment was an abuse of discretion and plainly and palpably wrong. Birmingham Retirement Relief System,532 So.2d 1019; Brannon, 477 So.2d 445.
Since the amount of post-minority college support that a non-custodial parent can be required to provide is a question of first impression, we look to Bayliss, wherein the supreme court merged the law of other states, for guidance.
In Bayliss, the supreme court addressed the jurisdiction of the trial court to require parents to provide post-minority support for college education to children of a marriage terminated by divorce as follows:
 "In a proceeding for dissolution of marriage or a modification of a divorce judgment, a trial court may award sums of money out of the property and income of either or both parents for the post-minority education of a child of that dissolved marriage, when application is made therefor, as in the case at issue, before the child attains the age of majority. In doing so, the trial court shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education. The trial court may consider, also, the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance."
550 So.2d at 987 (first emphasis supplied; second emphasis original in Bayliss).
 The supreme court additionally stated: "Our trial courts have demonstrated that they have the wisdom of Solomon in these domestic matters. We know that they will continue to demonstrate that wisdom in deciding whether to require a parent to provide, or help defray the cost of, a college education for a child, even after that child attains the age of 19 years."
Id. at 995.
Clearly, the trial court has been given discretionary authority to determine whether to award any post-minority college support applied for during minority for the child's education and in making this determination "shall consider all relevant factors that shall appear reasonable and necessary."Id. at 987.
Bayliss clearly specifies those factors which shall, and those which may, be considered by the trial court in awarding sums for post-minority education, and we must now determine whether the trial court abused its discretion in applying these factors in its determination that the husband be responsible for a portion of the cost of the remainder of Patrick's four-year college education (three semesters) at the cost of Auburn University.
We will first address the financial resources of the parents, one factor which must be considered by the trial court in awarding sums for college education. Although the father's income was over $400,000 in 1988, he testified that a portion of his income either was in-kind or was partnership profits which were not received. The wife receives $36,000 in alimony from the husband, plus whatever she receives in income from selling clothes and from investment income. In considering the comparative financial resources of the mother and father, the trial judge may very well have considered the evidence that the income shown in the husband's tax returns did not indicate the amount of income that he actually received and that the husband was already paying $36,000 in alimony to the wife.
The next factor listed in Bayliss, which must be considered by the trial court, is the child's commitment to, and aptitude for, the requested education. The supreme court stated that Patrick would be "an Alpha Plus if this were Huxley's Brave NewWorld," Bayliss, 550 So.2d at 994, and we find that this continues to be true. Patrick has maintained his grades at a very high *Page 1121 
level, as well as participating in athletics and other activities, thereby demonstrating his aptitude for college education. Therefore, we find that Patrick has clearly demonstrated the commitment to, and the aptitude for, a college education.
An additional factor which the trial court may consider in awarding sums of money for a college education is the standard of living which the child would have enjoyed if the family had not been separated by divorce.
Here, there was evidence presented to the trial court that the father attended Auburn University and that he had recommended attendance at a state school to Patrick if Patrick planned to live in Alabama. In considering the standard of living that the child would have enjoyed if the marriage had not been dissolved, we find that the trial court could have considered that Patrick may very well have been provided a college education at Auburn University and no more.
Finally, the supreme court in Bayliss has directed that the trial court may consider the child's relationship with his parents and his responsiveness to their advice and guidance.
The father cites cases from other jurisdictions for the proposition that the distance between Patrick and the father is a factor which supports the trial court's decision. We note that in those cases the parent was excused from paying any amount toward the cost of a college education due to complete repudiation of the parent by the child and refusal to associate with the parent for no apparent reason. See Hambrick v.Prestwood, 382 So.2d 474 (Miss. 1980), and Riegler v. Riegler,259 Ark. 203, 532 S.W.2d 734 (1976).
In the present case, Patrick did discuss his college visitation with his father, but did not initiate further discussions regarding college choices with his father after the father declined to give financial aid. Although the son and the father may both be at fault in their estrangement, the trial court could have considered the exclusion of the father from the college selection process and the lack of input as to cost management in its decision limiting the father's financial responsibility to a portion of the cost of a college education at Auburn University.
We also note that, in limiting the father's cost to the payment of tuition, room, board, books, and fees, the trial court could have left the other reasonable expenses of maintenance to be supplied by the mother or other sources. We find that this is also in line with the holding inBayliss, wherein the supreme court states that "a trial court may award sums of money out of the property and income of either or both parents." Bayliss, 550 So.2d at 987.
Finally, we will consider that portion of the trial court's judgment which holds that the father shall contribute to Patrick's college education beginning with the winter term which started in January 1990. This coincides with the issuance of the trial court's order on remand. The petition to modify was filed on January 6, 1988, in the middle of Patrick's freshman year at Trinity College; the trial court's first order was entered on June 21, 1988; and Ex parte Bayliss was rendered in the summer of 1989. The trial court did not apply any of these dates for retroactive application of the college support obligation of the father. In the absence of such retroactive application, the father would only be required to assist with three semesters of Patrick's attendance at college. Our interpretation of Bayliss is that this was not the intent of the supreme court.
It is apparent that time is particularly crucial in a request for modification to provide for post-minority support for a college education. In the present case, although the mother filed her petition to modify at the end of Patrick's first semester in college, support has been granted only from the middle of his junior year. Without retroactivity in a case such as this, it is possible that a case could be delayed by appeals until college attendance was completed and that the non-custodial parent could avoid his or her duty to provide that support. "There is a sound policy favoring retroactivity in most cases, because the party entitled to support should not be penalized for having to resort to time-consuming *Page 1122 
court proceedings." Sutliff v. Sutliff, 339 Pa. Super. 523, 556,489 A.2d 764, 781 (1985). Therefore, we find that, in cases involving post-minority support for college education where the child is already attending college, the decision rendered by the trial court will be retroactive to the time of the filing of the request.
Based on the above, we find that the trial court correctly applied the relevant law to the facts, that the judgment of the trial court was supported by the evidence, and that the trial court did not abuse its discretion when it ordered the father to pay an amount equivalent to room, board, books, tuition, and necessary fees at Auburn University. However, we further find that the part of the order that grants this support from the beginning of the winter term which started in January of 1990 is due to be reversed and that the support is to be granted from the date of the filing of the petition to modify.
This case is due to be affirmed in part, reversed in part, and remanded with instructions to enter an order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
INGRAM, P.J., and ROBERTSON, J., concur.