In this workers' compensation case, Curtis Dale Holton petitioned this Court for certiorari review of the Court of Civil Appeals' judgment reversing the trial court's award of workers' compensation benefits. The trial court found that Holton was injured in the line and scope of his employment and that he is permanently and totally disabled. We granted Holton's petition; we reverse and remand.
Curtis Dale Holton lives in West Monroe, Louisiana; he was 23 years old on the day of his accident. On October 14, 1999, Holton was working for Mastec North America, Inc., laying conduit for fiber-optic cable along U.S. Highway 90 near the Styx River in southeast Baldwin County. Late *Page 84 
in the afternoon on October 14, Mastec's boring superintendent suggested that the crew take a break and go swimming in the Styx River.
The crew went swimming at a spot along the river where the bank was sandy; there was a rope swing hanging from a tree. One member of the work crew grabbed the rope swing and jumped safely from the swing into the deep part of the river. Holton was next in line for the rope swing. Holton grabbed the rope and attempted to jump into the deep water in the middle of the river; instead, he slipped and fell into shallow water, breaking his neck at the C6-C7 vertebrae. As a result of the accident, he is essentially paralyzed from the neck down; he retains very limited movement of his hands and arms.
On June 2, 2000, Holton sued Mastec in the Baldwin Circuit Court seeking workers' compensation benefits and medical benefits. After a bench trial, the trial court entered a judgment awarding past and future compensation for permanent total disability, compensation for future medical expenses, and $176,494.48 for past medical expenses. The trial court found:
 "The MasTec supervisors, including Parker Johnson, had permitted the men to engage in a variety of recreational activities during breaks in the work activity, such as hitting golf balls into the pastures along the roadside, throwing a football, going on boat rides, and swimming in the creeks and rivers near the work sites. . . . The employer had no policy prohibiting such recreational activities on the job. The defendant failed to produce employee manuals, written work rules, or other document[s], even though they had been requested by the plaintiff and ordered produced by the Court. The Court therefore finds that such activities were permitted by the employer and served the purpose of making the difficult work conditions more tolerable.
 "It is the testimony of every person who was present at the time of the accident that the crew was going to close up its boring operation in that location and go to assist another crew in a different location, after the men took a break to go swimming. . . . The plaintiff and his fellow employees were still on the job at the time of his injury. Therefore, the Court finds that the plaintiff's injury occurred during the course of employment."
Mastec moved to alter, amend, or vacate the judgment. On October 25, 2001, the trial court entered an amended judgment, modifying only the manner in which Mastec could satisfy that part of the judgment awarding past medical expenses. Mastec appealed to the Court of Civil Appeals. The Court of Civil Appeals reversed the trial court's judgment, Mastec North America, Inc. v. Holton,886 So.2d 79 (Ala.Civ.App. 2002), and subsequently overruled Holton's application for a rehearing. Holton petitioned this Court for certiorari review, which we granted.
Section 25-5-81(e), Ala. Code 1975, sets forth the applicable standard of review in a workers' compensation case:
 "(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
 "(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence."
"The trial court's findings of fact `"on disputed evidence in a workers' compensation case are conclusive."'" Ex parte DrummondCo., 837 So.2d 831, 832-33 (Ala. 2002) (quoting Ex parte GoldenPoultry, *Page 85 772 So.2d 1175, 1176 (Ala. 2000) (quoting in turn Ex parteEllenburg, 627 So.2d 398, 399 (Ala. 1993))).
Holton argues that his injuries arose from his employment. He argues that in deciding his case, the Court of Civil Appeals failed to follow its own decision in LFI Pierce, Inc. v.Carter, 829 So.2d 158 (Ala.Civ.App. 2001), cert. denied,829 So.2d 163 (Ala. 2002), and, as a result, the Court of Civil Appeals has created a defense of "contributory negligence" in a workers' compensation case. Mastec argues that Holton's injury did not arise out of his employment. Mastec also argues that even if, for the sake of argument, a swim break was part of Holton's employment, the manner in which Holton attempted to enter the water was unreasonable and unconventional, and he is therefore not due compensation.
Under Alabama workers' compensation law, "`[a]n injury to an employee arises in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it.'"Ex parte Shelby County Health Care Auth., 850 So.2d 332, 336
(Ala. 2002) (quoting Anderson v. Custom Caterers, Inc.,279 Ala. 360, 361, 185 So.2d 383, 384-85 (1966)).
Holton argues that Alabama courts have routinely found workers' injuries to be compensable when workers on a job are injured while ministering to their personal needs.[1] Holton argues that this case is analogous to LFI Pierce. In LFI Pierce, Phillip Mahan, an employee of LFI Pierce, Inc., d/b/a Labor Finders, was working to remove storm debris from a steep slope on a residential lot on Lake Tuscaloosa. The temperature and humidity were both high. Because of the extreme and oppressive conditions, the work crew took a 15-minute break every 45 minutes. During one of those breaks, crew members walked down to the lake for a swim. Mahan joined his coworkers in the lake and drowned.
The Court of Civil Appeals held in LFI Pierce that "[c]onsidering the particular facts of this case and keeping in mind the beneficent purpose of the [Workers' Compensation] Act, we conclude that Mahan did not substantially deviate from his employment by jumping into the lake to cool off."829 So.2d at 160. The Court of Civil Appeals noted:
 "`It is well settled that work-connected activity goes beyond the direct services performed for the employer and includes at least some ministration to the personal comfort and human wants of the employee. Such acts which are necessary to the life, comfort, and convenience of the employee while at work, though strictly personal to himself, and not acts of service are incidental to the service. Therefore, an injury sustained *Page 86 
in the performance thereof is deemed to have arisen out of the employment.'"
Id. (quoting Gold Kist, Inc. v. Jones, 537 So.2d 39, 41
(Ala.Civ.App. 1988)).
Holton argues that in this case the Court of Civil Appeals adopted a new rule that creates a defense of an employee's own negligence to a workers' compensation claim. In Holton's case, the Court of Civil Appeals held
 "that the employee's action of attempting to jump into the river from a rope swing is an `unreasonably dangerous or unconventional' method of cooling off or taking a work break. Therefore, we conclude that the trial court erred by finding that the employee's accident `arose out of' and `in the course of' his employment."
886 So.2d at 81.[2] Mastec argues the Court of Civil Appeals' holding is correct because, it argues, jumping from a rope swing is an unreasonable means to enter a river in order to take a swim and cool off on a hot day.
Holton notes that § 25-5-51, Ala. Code 1975, states that workers' compensation benefits should be paid in any case where an employee is injured "by an accident arising out of and in the course of his or her employment, without regard to any question of negligence." "Our [Workers'] Compensation Laws were adopted from those of Minnesota and the Minnesota construction of their laws is of persuasive value to this court." Eley v. Brunner-LaySouthern Corp., 289 Ala. 120, 125, 266 So.2d 276, 280-81 (1972). In Snyder v. General Paper Corp., 277 Minn. 376,152 N.W.2d 743, 748 (1967), a salesperson, Reuben Snyder, died when he choked on a piece of meat while he was eating dinner with a client. The Supreme Court of Minnesota analogized the case to one in which it had awarded workers' compensation benefits after an employee died from eating poisoned food, and held in the case of the choking:
 "[I]n both situations the event causing injury had its origin in circumstances created by the employer for the purpose of furthering the employer's business, and the death or injury flowed as a natural consequence therefrom. Whether [the] employee may have been negligent in his manner of eating is immaterial since contributory negligence does not relieve an employer from liability under the [Workers'] Compensation Act."
Because the employee's eating arose from his employment, the employee's own negligence in chewing and swallowing did not relieve the employer from liability for his choking. The same rule should apply where an employer sanctions a swimming break for its employees.
In this case Holton went swimming with coworkers during a work break. Holton witnessed a coworker jump safely into the river from a rope swing. Holton then slipped from the same rope swing while jumping into the river. Because Mastec permitted its employees to swim during a break to cool off, Holton's method of entering the water is not a bar to his receiving workers' compensation benefits.[3] *Page 87 
Section 25-5-51, Ala. Code 1975, states that "no compensation shall be allowed for an injury or death caused by the willful misconduct of the employee. . . ."[4] Alabama courts, for example, have declined to award workers' compensation benefits when a worker has been injured while engaging in prohibited "horseplay" in violation of an employer's rules. See Walden v.Glaze Son, 616 So.2d 357 (Ala.Civ.App. 1992).[5]
Finally, Holton argues that the Court of Civil Appeals erred when it reweighed the facts in this case and substituted its judgment for the judgment of the trial court. Mastec argues that the Court of Civil Appeals did not err when it reversed the trial court's judgment, because, it argues, the trial court's findings of fact were not supported by substantial evidence. The Court of Civil Appeals held in this case that Holton was not swimming on a work break during working hours. This Court held in Ex parteDrummond Co., 837 So.2d at 832-33, that a trial court's findings of fact in a workers' compensation case are conclusive where the evidence is contested. The trial court found in this case that the evidence was undisputed that Holton was injured during a work break. We find that the Court of Civil Appeals has impermissibly substituted its judgment for that of the trial court.
Therefore, we reverse the judgment of the Court of Civil Appeals and remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] Holton cites Wells v. Morris, 33 Ala.App. 497,35 So.2d 54 (1948), in support of his argument that Alabama has long awarded compensation to workers injured while ministering to their personal needs in the course of their employment, regardless of the employee's own negligence. In Wells, the Court of Appeals held that a log cutter was entitled to workers' compensation benefits when, notwithstanding his own negligence, a can of lubricating oil he was using to heat his lunch exploded. Holton also cites Natco Corp. v. Mallory, 262 Ala. 595,80 So.2d 274 (1955). In Natco, during a work break, an employee pulled up some boards and crawled under a moving conveyor belt to retrieve his cigarettes, which had fallen into a pit beneath the belt. The employee was injured when he stuck his hand into a moving wheel as he was getting out of the pit. In Natco, this Court upheld a workers' compensation award to the employee.
[2] The Court of Civil Appeals supported this conclusion with a citation to the following dicta from Gold Kist, Inc.,537 So.2d at 41:
 "Although not a factor in this case, we do point out, however, that the method or manner of seeking personal comfort may be unreasonably dangerous or unconventional and in that instance may not be considered incidental to the work normally within the course of employment."
[3] We do not hold in this case that if an employee is injured while swimming during working hours those injuries necessarily arose from the employee's employment; instead, we hold only that where the trial court has found that the employer permitted the employee to swim on a work break and that the employee's negligence led to the employee's injury, this Court will not substitute its judgment for that of the trial court.
[4] "The usual meaning assigned to `willful,' . . . is that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences." W. Page Keeton et al., Prosser and Keeton on theLaw of Torts § 344 at 213 (5th ed. 1984) (footnotes omitted).
[5] Mastec is in a far better position than is this Court to define the scope of its employees' duties by establishing clear work rules and procedures adapted to a particular job or workplace. Mastec could have avoided liability for workers' compensation in this case by prohibiting its workers from swimming during breaks. We note, however, that the trial court found: "The defendant failed to produce employee manuals, written work rules, or other document[s], even though they had been requested by the plaintiff and ordered produced by the Court."