DONALDSON, Judge.
In order for an injured employee to be entitled to receive compensation under the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975- (“the Act”), the injury must arise out of and in the course of employment with the employer. See § 25-5-1(8),-Ala.Code 1975. In this case, Dana Louise Pollock appeals from a summary judgment entered in favor of her employer, Girl Scouts of Southern Alabama, Inc. (“GSSA”), by the Mobile Circuit Court (“the trial court”) denying Pollock benefits she claimed under the Act. The trial court concluded, as a matter of law, that Pollock’s injury resulting from a horseback ride did not arise out of or occur in the course of her employment with GSSA. We affirm the trial court’s judgment.

Facts and Procedural History

On June 12, 2013, Pollock filed a complaint in the trial court seeking compensation and benefits under the Act. Pollock claimed that on, June 29, 2011, she was employed by GSSA and suffered an injury to her back while she and other employees of' GSSA were horseback riding at Camp Scoutshjre Woods (hereinafter sometimes referred to as “the camp”), a summer camp located in Citronelle and. operated by GSSA. GSSA filed an answer on July 1, 2013, denying that Pollock’s injury was compensable on .various grounds, including that Pollock’s injury did not arise out of and in the course of her employment with GSSA. GSSA filed a motion to bifurcate the trial to first resolve the dispute as to the compensability of Pollock’s injuries, to be followed if necessary by a trial on any remaining issues. The trial court granted that motion. ■ - ■
On January 6, 2014, GSSA filed a motion for a summary judgment as to the com-pensability of Pollock’s injuries under the Act and a brief in support thereof. In further, support of the motion, GSSA submitted interrogatory responses and excerpts from a deposition of Pollock and affidavits of Liz Brent, the chief executive officer of GSSA; Anna Marie Phelps, the director of the camp; Sally McGough, the horse director of the camp; and Kirsten Robinson, a GSSA employee who worked at the camp. On .January 28, 2014, Pollock filed a response to the motion for a summary judgment, to which she attached excerpts from her deposition and her own sworn affidavit executed on January 27, 2014. On February 3, 2014, GSSA filed a motion to strike portions of Pollock’s affidavit on the grounds that certain statements in her affidavit contradicted her sworn deposition testimony and that the affidavit was based, in part, on hearsay. On the same day, GSSA also filed an objection to Pollock’s response to GSSA’s motion for a summary judgment on the basis that Pollock’s response relied on her allegedly improper affidavit. Pollock did not file a response to GSSA’s motion 'to strike or to GSSA’s objection.
The submissions of the parties on the motion for a summary judgment reveal the following undisputed facts. Pollock was employed by GSSA as the business manager of the camp and as the assistant to Phelps, the director of the camp; The GSSA holds a six-week program for Girl Scouts at the camp each summer. Pollock had worked at the camp- since 2002. At the end of each summer, Pollock’s employment would terminate. ' Typically, Pollock would reapply for employment the following year and would be rehired.
Iri 2011, there were 10 horses at the camp. As the camp’s horse director, McGough, a GSSA- employee, managed *225 horseback-riding activities for campers and maintained the horses. She had no supervisory or managerial oversight of Pollock. Pollock’s responsibilities at the camp did not involve horseback-riding activities, although she testified in her deposition that she would occasionally assist McGough by feeding, grooming, or putting out hay for the horses.
At the beginning of every camp season, McGough would organize a horseback ride for camp staff for the purpose of evaluating the horses. Pollock had participated in that ride in previous years, but she did not participate in 2011. Staff members who attend this ride did so on a voluntary basis. Similarly, at the end of every camp. season, McGough would organize a second ride for camp staff. The second staff horseback ride was not part of any staff member’s job duties and was not conducted to evaluate the horses. Participation in the ride was voluntary and not required by GSSA. GSSA did not derive a benefit from the second staff ride, and the ride was not a part of the staffs compensation, i.e., the ride was not a reward for the staff members’ work performance during the camp session.
On June 29, 2011, McGough invited Pollock to participate in the end-of-camp-season horseback ride with other GSSA employees at the camp. Pollock asked for and received permission to go on the ride from Phelps, Pollock’s immediate supervisor. Phelps testified that she questioned Pollock concerning whether it- was advisable for her to participate because Phelps was aware of back injuries Pollock previously had experienced. A total of four staff members, including Pollock and McGough, voluntarily participated in the ride. During the ride, the horse on which Pollock was riding' bolted unexpectedly. Pollock was thrown into the air and then collided with the horse. She heard a pop and felt an intense pain. Pollock was transported by ambulance to the University of South Alabama Medical Center, where she was treated and released. Pollock was diagnosed with a Til compression fracture and other spinal injuries and continues to experience chronic pain.
On February 7, 2014, the trial court held a hearing on the motion for a summary judgment filed by GSSA. A transcript of that hearing is not in the record. On February 18, 2014, the trial court entered a summary judgment in favor of GSSA and an order granting GSSA’s motion to strike Pollock’s affidavit. In its judgment, the trial court determined that Pollock’s injury occurred while she was engaged in the voluntary activity of horseback riding, which was unrelated to her job duties as business manager and assistant to the camp director. • The trial court concluded that Pollock’s injuries did not arise out of or in the course of her employment with GSSA. Pollock did not file a postjudgment motion to alter, amend, or vacate the summary judgment. Pollock filed a timely notice of appeal to this court on March 31, 2014.

Discussion

I. GSSA’s Motion to Strike Pollock’s Affidavit

Pollock first contends that the trial court exceeded its discretion in striking the affidavit of Pollock. Pollock argues that, although a party is not allowed to directly contradict prior sworn testimony to avoid the entry of'a summary judgment, see Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313, 317 (Ala.1992) (citing Doe v. Swift, 570 So.2d 1209, 1214 (Ala.1990)), a party is permitted to submit, pursuant to Rule 56(e), “ ‘a subsequent affidavit merely to clarify his or her answers to ambiguous questions asked by counsel during a deposition or other prior sworn proceeding or to supply information not necessarily *226 sought by questions asked at the deposition or other prior sworn proceeding [and that] the trial court should consider the subsequent affidavit.’ ” Sartin v. Madden, 955 So.2d 1024, 1030 (Ala.Civ.App.2006) (quoting Wilson v. Teng, 786 So.2d 485, 497 (Ala.2000)).
GSSA moved to strike portions of Pollock’s affidavit on the grounds that it contradicted her deposition testimony and that it contained hearsay. The trial court did not specify the ground on which it granted the motion. Pollock did not respond to GSSA’s motion to strike portions of her affidavit, nor did she respond to GSSA’s objection to her response to the motion for a summary judgment. She did not file a postjudgment motion to raise her objections to the trial court’s granting GSSA’s motion to strike. Therefore, Pollock’s arguments as to this issue have not been adequately preserved because she has raised them for the first time on appeal. “‘“Our review is limited to the issues that were before the trial court — an issue raised on appeal must have first been presented to and ruled on by the trial court.” ’ ” Cashion v. Torbert, 881 So.2d 408, 413 (Ala.2003) (quoting Ex parte Weaver, 871 So.2d 820, 823 (Ala.2003), quoting in turn Norman v. Bozeman, 605 So.2d 1210, 1214 (Ala.1992)).

II. Arising out of and in the Course of Employment

Pollock argues that the summary judgment was not proper insofar as it was based on the determination that her injuries did not arise out of and in the course of her employment with GSSA.
“With regard to the standard for reviewing a summary judgment, this court has stated:
“ ‘ “We review a summary judgment de novo, applying the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing ‘that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.’ Rule 56(c)(3), Ala. R. Civ. P. The court must view the evidence in a light most favorable to the nonmoving party and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990). If the movant meets this burden, ‘the burden then shifts to the nonmovant to rebut the movant’s pri-ma facie showing by “substantial evidence.” ’ Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992).” ’
“Barrett v. Lee Brass Co., 883 So.2d 227, 228 (Ala.Civ.App.2003) (quoting Bailey v. R.E. Garrison Trucking Co., 834 So.2d 122, 123 (Ala.Civ.App.2002)).”
McDuffie v. Medical Ctr. Enter., 110 So.3d 857, 859-60 (Ala.Civ.App.2012).
Pursuant to the Act, compensation may be awarded to an employee for “[i]n-juries by an accident arising out of and in the course of the employment.” § 25-5-1(8), Ala.Code 1975.
“ ‘The phrases [“arising out of’ and “in the course of’] are not synonymous; where both are used conjunctively a double condition has been imposed, and both terms must be satisfied in order to bring a case within the act.’ Union Camp Corp. v. Blackmon, 289 Ala. 635, 639, 270 So.2d 108, 111 (1972) (quoting Wooten v. Roden, 260 Ala. 606, 610, 71 So.2d 802, 806 (1954)). See also Kewish v. Alabama Home Builders Self Insurers Fund, 664 So.2d 917 (Ala.Civ.App. 1995); Grider v. McKenzie, 659 So.2d *227 612 (Ala.Civ.App.1994); Alabama Power Co. v. Mackey, 594 So.2d 1238 (Ala.Civ. App.1991).”
Ex parte Shelby Cnty. Health Care Auth., 850 So.2d 332, 335-36 (Ala.2002).
“Whether an accidental injury ‘arises out of the claimant’s employment is •basically a question of whether there is a causal relationship between the claimant’s performance of his or her duties -as an employee and the complained-of injury.” Ex parte Trinity Indus., Inc., 680 So.2d 262, 266 (Ala.1996).
“[I]n Alabama the employment must be the source and cause of the accident. Our supreme court in Wooten v. Roden, 260 Ala. [606,] 610, 71 So.2d [802,] 805 [ (1954) ], stated that in order to satisfy the ‘source and cause’ requirement ‘the rational mind must be able to trace the resultant injury to a proximate cause set in motion by the employment and not otherwise
[[Image here]]
“... [T]he burden is on the claimant to establish a definite causal connection between the work and the injury.”
Slimfold Mfg. Co. v. Martin, 417 So.2d 199, 201-02 (Ala.Civ.App.1981). In order to determine whether an employee’s injury arose out of his or her employment, “we must determine whether the employee’s injury arose from any risk or danger incidental to the character of his employment.” Young v. Mutual Sav. Life Ins. Co., 541 So.2d 24, 26 (Ala.Civ.App.1989); see also Mercy Logging, LLC v. Odom, 104 So.3d 908, 915 (Ala.Civ.App.2012) (“ ‘[T]he employment should be considered the legal cause of the injury for workers’ compensation purposes only when the injury results from an occupational risk.’” (quoting 1 Terry A. Moore, Alabama Workers’ Compensation § 10:5 at 318 (1998))).
“ ‘An injury to an employee arises in the course of his employment -when-it occurs within the period of his employment, at a place where he may reasonably be,, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incident to it.’ ” Ex parte Shelby Cnty. Health Care Auth., 850 So.2d at 336 (quoting Anderson v. Custom Caterers, Inc., 279 Ala. 360, 361, 185 So.2d 383, 384-85 (1966), citing in turn Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666 (1947)).
“[0]ur cases have set forth the following criteria to be considered in determining whether an activity is within the' course of employment:
“ ‘(1) The customary nature of the activity. (2) The employer’s encouragement or subsidization of the activity. (3) The extent to which the employer managed or directed the [activity]. (4) The presence of substantial pressure or .actual compulsion upon the employee to attend and participate. (5) The fact that the employer expects or receives a benefit from the employees’ participation in the activity.... Nor, indeed, is the foregoing enumeration meant to be exclusive of other factors which might appear in a given case. What is required in each case is an evaluation of the significance of each factor found to be present in relation to the enterprise as<a whole. Upon such an evaluation must the decision as to the closeness of the connection between-the employment and the [activity] ultimately rest.’
“Moore’s Case, 330 Mass. 1, 110 N.E.2d 764 (1953) (citations omitted), quoted with approval in Wooten v. Roden, 260 Ala. 606, 71 So.2d 802 (1954).”
Kennedy v. Cochran, 475 So.2d 872, 874-75 (Ala.Civ.App.1985).
*228 In the present case, Pollock contends that her injury arose out of and in the course of her employment with GSSA because she sustained the injury during work hours, during an event that was routinely held at the end of each camp season, on her. employer’s property, and after- receiving the permission of her immediate supervisor to participate in the horseback ride. GSSA argues that the horseback ride was an activity unrelated to Pollock’s job duties as business manager and assistant to the camp director, that Pollock voluntarily participated in the horseback ride, that GSSA did not require her to participate in the horseback ride, and that GSSA did not derive any benefit from the horseback ride.
In support of her argument, Pollock cites Kennedysupra, Board of Managers of City of Birmingham Retirement and Relief System v. Elliott, 532 So.2d 1019 (Ala.Civ.App.1988), and Ex parte Holton, 886 So.2d 83 (Ala.2003). In Kennedy, the employee’s job'duties consisted of driving a racé car owned by the employer at a speedway and operating a wrecker vehicle that responded to calls for a wrecker service at the speedway. The employee was injured in’ a collision while he was driving the race car owned by the employer. On the date of the accident, the employer had permitted the employee to race cars, but only if he’did not receive any calls for the wrecker service. ■ The employee was paid a fixed salary -regardless of whether he drove the wrecker vehicle or the race car. The employer received money awarded by ■the speedway for the race car’s performance. -The trial court determined that the employee’s injury was. compensable under Alabama’s then existing workers’ compensation laws. Applying the five factors announced in Wooten v. Roden, 260 Ala. 606, 71 So.2d 802 (1954), this court affirmed the trial court’s'judgment. This court determined that the employee’s accideht. occurred at the place of employment and while the employee was required to be at work. Furthermore, the employer had acquiesced to the employee’s driving the race car while on the employer’s payroll, the employer owned the race car in which the employee was injured, the employer received money from the speedway for the car’s performance, and the race car,-the -wrecker vehicle, -and the employee’s T-shirt bore the employer’s logo, thus denoting that the employer received an economic benefit from the employee’s activity. This court stated: “Upon an evaluation of the [Wooten ] factors, we conclude that a sufficient causal connection between employee’s injuries and his employment existed to justify recovery under the workmen’s compensation act.” Kennedy, 475 So.2d at 875 (citing Truck Ins. Exch. v. Industrial Comm’n, 22 Ariz.App. 158, 524 P.2d 1331 (1974)).
In Elliott, a Pension Act case, the employee, a firefighter, suffered a knee injury while he was working a 24-hour shift at the fire station with a coworker. The injury occurred while the employee was playing basketball on the premises of the fire station during free time when he was not on call. The fire station had a policy that allowed employees who were not on call to participate in ■ leisure activities, including exercise activities. The basketball goal on which the employee- was playing when- he was injured was located On the station’s property, and the fire department had consented to its- construction. The trial court awarded the employee -disability benefits under the Pension Act, which contains the same “arising out of and in the course of employment” ’requirement that is contained in the Act. This court affirmed, holding that allowing the employee to play basketball was a benefit to the employer because it occurred during working hours, was encouraged by the employer, and *229 served as a form of exercise that was sanctioned by the employer. The court in Elliott stated:
“As the treatises make clear, the better reasoned view in cases of this nature is that the injury was the result of an accident arising out of and in the course of the employment.
“Professor Larson states the following:
“ ‘Recreational or social activities are within the course of employment when
“ ‘(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
“ ‘(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
“‘(B) The employer derives substantial direct benefit from' the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.’
“1A A. Larson, The Law of Workmen’s Compensation § 22.00, at 5-82 (1985).
“Professor Larson also makes the following pertinent commentary regarding cases such as the one at bar:
“ ‘Tivo overt physical indicia of course-of-employment, time and place, are of unusual potency in identifying an activity with the employment. If both are present, that is, if the game is played on the premises during a lunch or recreation period, compensability has been seen to be clear. But even if only one of the two elements is present, the case has made a very strong start. Thus, if the game is played outside hours, the fact that it is played on the premises is a heavy — although not necessarily decisive — weight on the side of coverage, and may offset a serious deficiency in some other component of the case.’
“A. Larson, '§ 22.24(b) at 5-139 and -140 (emphasis supplied).”
532 So.2d at 1022.
Iñ Ex parte Holton, the employee was working with a crew on a project for his employer near the Styx River. A superintendent recommended that the crew go swimming in the river to Cool off during a work break. The employee witnessed a coworker jump safely into the river using a rope swing.' When the employee attempted to jump from the same rope swing, he slipped and fell into shallow water, breaking his neck. The trial court found the injury to be compensable, stating in its judgment that “ ‘activities [such as swimming] were permitted by the employer and served the purpose of making the difficult work conditions more tolerable.’ ” Ex parte Holton, 886 So.2d at 84. This court reversed, holding that the employee was not on a work break when swimming and stating that “[attempting to jump' into an unfamiliar river from a rope swing was not ‘incidental’ to this employee’s employment.” Mastec N. Am., Inc. v. Holton, 886 So.2d 79, 82 (Ala.Civ.App.2002)(foot-note omitted). On cértiorari review, the supreme court reversed this court’s judgment, holding that the trial court’s finding that the employee was on a work break was uncontested. The supreme court quoted LFI Pierce, Inc. v. Carter, 829 So.2d 158 (Ala.Civ.App.2001), for the proposition that
“ ‘ “work-connected activity goes beyond the direct services performed for the employer and includes at least some *230 ministration to the personal comfort and human wants of the employee. Such acts which are necessary to the life, comfort, and convenience of the employee while at work, though strictly personal to himself, and not acts of service are incidental to the service. Therefore, an injury sustained in the performance thereof is deemed to have arisen out of the employment.” ’ ”
Ex parte Holton, 886 So.2d at 85-86 (quoting LFI Pierce, 829 So.2d at 160, quoting in turn Gold Kist, Inc. v. Jones, 537 So.2d 39, 41 (Ala.Civ.App.1988)). The supreme court stated: “Because [the employer] permitted its employees to swim during a break to cool off, [the employee]’s method of entering the water is not a bar to his receiving workers’ compensation benefits.” 886 So.2d at 86 (footnote omitted). The supreme court noted, however, that “we hold only that where the trial court has found that the employer permitted the employee to swim on a work break and that the employee’s negligence led to the employee’s injury, this Court will not substitute its judgment for that of the trial court.” 886 So.2d at 86 n. 3.
In support of its contention that Pollock’s injury did not arise out of and in the scope of her employment, GSSA cites Anderson v. Custom, Caterers, Inc., 279 Ala. 360, 185 So.2d 383 (1966). In Anderson, the employee sustained an injury when she fell while dancing at a Christmas party hosted by the employer at the employer’s place of business. The purpose of the party was to help “promote a better employer-employee relationship and the [employer] expected to receive benefits ‘from giving the party in the form of happier and more satisfied employees.’ ” 279 Ala. at 361, 185 So.2d at 384. The employee was not “on duty” but voluntarily agreed to attend the party without compulsion from the employer and without receiving compensation from the employer. The trial court determined that the injury was not compensable under Alabama law. In applying the relevant factors announced in Wooten, supra, our supreme court determined that the trial court’s conclusion was due to be affirmed because the employer had not encouraged the activity, the employer had received no benefit from the employee’s participation in the party, and the employee had received no compensation for attending the party;
Although Pollock suffered her injury while on GSSA’s premises and while she was apparently being paid by GSSA, GSSA submitted substantial evidence in support of its motion for a summary judgment establishing that the horseback ride was a voluntary recreational activity that was unrelated and not incidental to Pollock’s duties as business manager and assistant to the director of the camp.
None of the cases Pollock cites are directly on point with the facts of the current case. In Elliott and Kennedy, the employer received an economic benefit from the employee’s recreational activity. The uncontested evidence submitted by GSSA shows that it did not receive an economic benefit from the horseback ride. Furthermore, in Elliott, Kennedy, and Holton, the employees were encouraged, either explicitly or implicitly, by the employer to participate in the activity. In this case, the uncontested evidence submitted by GSSA shows that Pollock received permission from Phelps to go on the ride but that her decision to participate was voluntary and not encouraged by GSSA.
Pollock testified in her deposition that her responsibilities as business manager included operating the camp’s store. Pollock testified that her duties as assistant camp director included working on the camp schedule, attending camp events, and assisting the campers with earning their *231 badges. In support of its contention that horseback riding was not a part of Pollock’s employment duties, GSSA submitted the affidavits of Brent and Phelps, who averred that Pollock’s job duties were primarily business related and did not include horseback riding. Furthermore, Pollock testified to the following in her deposition:
“Q. At any point in time, were you responsible for taking girls, the young ladies who were attending Girl Scout camp, were you responsible for taking them on any trail rides?
“A. No.
“Q. Did you have any particular responsibilities as to the horses as far as caring for them, anything of that nature?
“A. Well, part of my duties was to, you know, take care of all of the camp. So I was at all of the sites and all of the units, and I would go up from time to time and I would help feed them their food in the morning if [McGough] needed help. I would help groom them. At night we would go up and put hay out for the horses. One year I had to give a horse a shot because [McGough] couldn’t do it.
[[Image here]]
“Q. So if you wanted to go riding on the horses at the beginning of horse camp or at the end of horse camp, for you as a staff member, that was purely voluntary for you to go; right? No one said that you had to go, did they?
“A. No, nobody said I had to go.
“Q. No one said that was part of your job, did they?
“A. Well, I’m on duty, so I’m working at that time.
“Q. Who said it was part of your job to go horseback riding?
“A. Well, there are times when she needs people to — she. needs to take the horses out. So she’s not going to take them out with the girls. So she’s asked us to — she needs bodies to be on the horses to take the horses out to check the horses out.”
GSSA presented substantial evidence in support of its motion for a summary judgment to show that, while horseback riding, Pollock was not “ ‘engaged in an act naturally related and incidental to the service or work which [she] was engaged to perform’ ” as business manager of the camp and assistant to Phelps; thus, her injury did not arise out of her employment with GSSA McDuffie, 110 So.3d at 863 (quoting Massey v. United States Steel Corp., 264 Ala. 227, 232, 86 So.2d 375, 380 (1955), and citing Ex parte Strickland, 553 So.2d 593, 595 (Ala.1989), for the proposition that “the inquiry is whether [the employee’s] injury naturally related to his [or her] employment”).
Furthermore, GSSA presented substantial evidence in support of its motion for a summary judgment to show that the factors set forth in Wooten, supra, were not present. Pollock had not participated in previous horseback rides during the 2011 camp season, thus indicating that the activity was not customary for Pollock. The evidence further indicates that GSSA neither encouraged nor subsidized the activity; rather, Phelps gave permission to Pollock only to voluntarily participate in the activity in her free time. Neither GSSA nor its supervisors at the camp managed or directed the horseback ride; rather, McGough, a coworker of Pollock’s, organized the ride as a voluntary activity for all the staff and invited Pollock to participate. The evidence gives no indication of a presence of substantial pressure or actual compulsion upon Pollock to participate in the ride. Finally, GSSA neither expected nor received a benefit from the horseback ride.
*232 Thus, we conclude that the trial court did not err in determining that there were no genuine issues of material fact and that GSSA was entitled to judgment as a matter of law on the issue whether Pollock’s injury arose out of and in the course of her employment with GSSA. Therefore, the trial court correctly determined that Pollock was not entitled to benefits under the Act. Accordingly, the trial court’s judgment is affirmed.
AFFIRMED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P. J., concurs in the result, without writing.